Robert B. DePUGH, Plaintiff,

v.

Rick D. PENNING, Sheriff of Grundy County, Iowa, In his Personal and Official Capacities, John L. McCarter, In His Personal Capacity, Todd A. Geer, In His Personal Capacity, et al.

No. C 93–0226.

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

May 26, 1995.

Robert B. DePugh, Independence, MO, plaintiff, pro se.

Nathan A. Callahan, Waterloo, IA, for defendant.

MEMORANDUM OPINION AND ORDER REGARDING THE PARTIES' CROSS–MOTIONS FOR SUMMARY JUDGMENT

BENNETT, District Judge.

## TABLE OF CONTENTS

I. INTRODUCTION AND PROCEDURAL BACKGROUND ....................965

II. STANDARDS FOR SUMMARY JUDGMENT ..............................967

III. FINDINGS OF FACT ...............................................968
 A. Undisputed Facts................................................968
 B. Disputed Facts ................................................970

IV. LEGAL ANALYSIS ................................................971
 A. Standing......................................................971
 1. Expectation of privacy ...............................................972
 2. Property interest......................................................975
 a. Abandonment .....................................................977
 b. Abandonment of the property seized here ..........................979
 3. Summary On Standing ...............................................979
 B. Lack Of Harm ................................................980
 C. DePugh's Substantive Claims......................................982
 1. Fourth Amendment Requirements......................................982

2. Validity of the warrant and "probable cause" ..........................983
 a. "Probable cause" and the First Amendment ........................984
 b. Confidential informants and corroboration .........................984
 c. Staleness ........................................................986
 d. Probable cause in this case .....................................987
3. Validity of the warrant and "particularity" ...........................989
4. Misleading information .............................................991
5. Validity of a warrantless search and seizure ........................992
 a. Consent ........................................................992
 b. Abandonment ...................................................994
 c. Plain view .....................................................995
 d. Duplication of a private search .................................997
D. Qualified Immunity .................................................998
 a. Analysis of a qualified immunity defense..........................998
 b. The test for qualified immunity on summary judgment .............999
 c. Qualified immunity for an unconstitutional search or seizure ........999
 d. Qualified immunity here .......................................1000

V. CONCLUSION ...............................................1002

One of the hallmarks of our form of government is protection of personal privacy, particularly the sanctity of one's home and personal effects, matters deeply respected by some societies since Roman times.[1] Despite the fact that American colonists went to war against England in part because of the abuses of the right to personal privacy, that right was deeply respected in the law of England from which so many of our cherished principles have been adopted. For example, William Pitt, Earl of Chatham, in 1763 is said to have declaimed in the throes of a parliamentary debate on searches incident to the enforcement of an excise on cider,

> The poorest man may in his cottage bid defiance to all the forces of the Crown. It may be frail; its roof may shake; the wind may blow through it; the storm may enter; the rain may enter; but the King of England cannot enter—all his force dares not cross the threshold of the ruined tenement![2]

This case raises the question of whether the sheriff of Grundy County, Iowa, exceeded the authority which restrained the King of England in William Pitt's time and, in the process, violated the Fourth Amendment of the United States Constitution, our own embodiment of the right to privacy in our homes and property.

In this lawsuit brought pursuant to 42 U.S.C. § 1983, a pro se plaintiff seeks money damages against a county sheriff, in both his official and individual capacities, as the result of issuance of a search warrant and seizure of personal property allegedly in violation of plaintiff's First Amendment rights to freedom of speech and expression, Fourth Amendment right to be free from unreasonable search and seizure, and Fourteenth Amendment right to due process. On cross-motions for summary judgment, plaintiff asserts that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. The defendant county sheriff argues that issues of fact preclude summary judgment in plaintiff's favor, but that on the undisputed facts he is entitled to summary judgment on a number of grounds. The sheriff argues plaintiff's lack of standing or damages, the validity of the warrant in question, or, if the warrant was invalid, the receipt of consent for the search, abandonment of the property seized, applicability of the "plain view" exception, and duplication of a private search, as well as qualified

---

1. Cicero, writing in 57 B.C., remarked that each citizen's home was "sacred ... hedged about by every kind of sanctity." Furthermore, under the sixth century code of the Emperor Justinian of Byzantium, a freeman could not even be summoned from his house, because "everyone's safest place, his refuge and shelter," was his home.

2 W. Cuddihy, The Fourth Amendment: Origins and Original Meaning, xciii–xciv (1990).

2. Miller v. United States, 357 U.S. 301, 307, 78 S.Ct. 1190, 1195, 2 L.Ed.2d 1332 (1958) (quoting The Oxford Dictionary of Quotations 379 (2d ed. 1953)).

immunity, as establishing his entitlement to summary judgment.

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

■ On October 12, 1993, plaintiff Robert B. DePugh filed his complaint in this action pursuant to 42 U.S.C. § 1983 alleging ten causes of action for violation of his civil rights as the result of execution of a search warrant for his former residence in Reinbeck, Iowa, on October 22, 1991. Defendants were John L. McCarter, a magistrate of Iowa's First Judicial District in Grundy County, Iowa, who issued the search warrant for DePugh's former residence, Rick D. Penning, the Sheriff of Grundy County, who sought and executed the warrant, and Todd A. Geer, an Assistant Grundy County Attorney, who purportedly refused to return the property seized pursuant to the warrant.[3]

In his complaint, DePugh sought $10,000 in compensatory damages and $40,000 in punitive damages against each defendant. In addition, DePugh sought declaratory judgment to the effect that the conduct of the defendants violated various of his constitutional rights. In lieu of answering, on November 16, 1993, defendants Penning and Geer filed a motion to dismiss pursuant to *Fed.R.Civ.P.* 12(b)(6). Following renewed service on all of the defendants, on May 17, 1994, defendant McCarter also filed a motion to dismiss pursuant to *Fed.R.Civ.P.* 12(b)(6). Defendants Penning and Geer then renewed their motion to dismiss on May 25, 1994. The court permitted limited discovery in light of the motions to dismiss. Although none of the defendants had yet answered the complaint in this matter, on November 3, 1994, plaintiff filed a motion for summary judgment, asserting that there is no genuine issue of material fact, and that he is entitled to judgment as a matter of law.

On January 10, 1995, this court granted the motion to dismiss of defendant McCarter, on the grounds of judicial immunity and lack of a "live" controversy for the purposes of declaratory judgement. The court also granted defendant Geer's motion to dismiss, because the court concluded that DePugh had failed to state a claim that Geer violated his constitutional rights of access to the courts and due process: what the complaint alleges is that Geer identified for DePugh the appropriate process for vindication of those rights. However, the court concluded that DePugh had adequately pleaded claims against defendant Penning in his official and individual capacities. The court concluded that DePugh's allegation that Penning, as the Sheriff of Grundy County "possessed final authority over the subject matter at issue and used that authority in an unconstitutional manner," if proven, would be sufficient to establish official-capacity liability. Any claim for punitive damages against defendant Penning in his official capacity was stricken, however, because an official-capacity claim is in all but name a claim against the governmental entity, and such a governmental entity is immune from punitive damages under § 1983. DePugh has also stated a claim against Penning in his individual capacity because he alleged that Penning acted under color of law by committing constitutional violations under the authority of a warrant from an Iowa state court.

The court reserved ruling on DePugh's motion for summary judgment until such time as defendant Penning had answered the complaint and filed a response to the motion for summary judgment. This matter therefore has proceeded only upon claims for money damages against defendant Penning in his official and individual capacities.[4]

---

3. DePugh also sued several "John Doe" defendants, stating that he would file an amended complaint properly identifying these defendants. A plaintiff under § 1983 may sue a "John Doe" defendant in order to preserve his or her cause of action while attempting to identify the defendant. *See Roberts v. Dillon*, 15 F.3d 113, 115 (8th Cir.1994) ("Even were [plaintiff in a § 1983 action] unable to ascertain [a possible defendant's] identity, [plaintiff] could have sued [the possible defendant] as a "John Doe" Deputy Sheriff, thereby preserving her cause of action."). However, no amended complaint has ever been filed in this case identifying the John Doe defendants or their alleged wrongdoing. Thus, no relief may be accorded DePugh against such defendants.

4. The causes of action against defendant Penning on which this lawsuit proceeds are as follows:

24. *First cause of action:* Through [his] seizure of Minutemen literature and publications,

Penning answered the complaint on January 26, 1995, and on February 1, 1995, he resisted DePugh's motion for summary judgment. Penning asserted as grounds for denial of DePugh's motion for summary judgment that the warrant authorizing search of the premises in Reinbeck, Iowa, and seizure of DePugh's property was supported by probable cause. On February 6, 1995, Penning filed his cross-motion for summary judgment. In that motion, Penning asserts that he is entitled to summary judgment on a number of grounds.

First, Penning again argues that the warrant in question was supported by probable cause that the property to be seized had been obtained in violation of law, was illegal to possess, was possessed with intent to commit a public offense, or was evidence of a crime. Next, Penning argues that DePugh has no cause of action for damages, because he cannot establish actual damages from the conduct of which he complains. Third, Penning contends that DePugh does not have standing to complain of the search or seizure, because he had no privacy or ownership interest in the property searched or seized. Penning also argues that he is entitled to summary judgment even if the warrant in

question was invalid, because no warrant was required. As grounds for this assertion, Penning argues that the property seized was abandoned and that he conducted the search pursuant to the consent of the bank that was seeking to recover the premises following default of the leaseholder. He also argues that the items seized were in plain view of an officer in the building by permission and the incriminating value of these items was immediately apparent. Penning also argues that the search and seizure were "duplicitous" of a prior private search,[5] and that no damages resulted to DePugh from Penning's conduct "following the private party search."

DePugh resists Penning's motion for summary judgment on each and every ground. DePugh asserts that the warrant was not supported by probable cause, and that he has standing to complain of the seizure of his property whether or not he had a privacy or property interest in the place from which it was seized. He also argues that he need not show actual damages in order to pursue a cause of action for violation of his fundamental rights. DePugh responds to the arguments that no warrant was required for the search and seizure by vehemently denying that the property seized was abandoned;

defendant[ ] Penning ... violated plaintiff's First Amendment right of freedom of the press.

25. *Second cause of action:* By seizing plaintiff's photographs, defendant[ ] Penning ... violated plaintiff's First Amendment right of expression.

26. *Third cause of action:* By seizing plaintiff's photographic film and all copies therefrom, defendant[ ] Penning ... imposed an illegal prior restraint against plaintiff's future use or publication of such photographs in violation of the First Amendment of the United States Constitution.

27. *Fourth cause of action:* By seizing the book of names and addresses mentioned in paragraph 14, supra, defendant[ ] ... Penning, acting under color of law, violated plaintiff's freedom of association as guaranteed by the First Amendment.

28. *Fifth cause of action:* Through their seizure of these names and addresses, defendant[ ] ... Penning made it impossible for plaintiff to locate a needed witness in time for trial in Missouri, thereby violating plaintiff's right to unimpaired access to the courts as guaranteed by the "right to petition" clause of the First Amendment.

29. *Sixth cause of action:* By seizing tape recorded speech as listed in paragraph 14,

supra, defendant[ ] ... Penning, acting under color of law, violated plaintiff's freedom of speech.

\* \* \* \* \* \*

31. *Eighth cause of action:* By seizing plaintiff's property under a search warrant which he knew or reasonably should have known, to be constitutionally invalid, defendant Penning deprived plaintiff of rights guaranteed by the Fourth Amendment.

32. *Ninth cause of action:* By seizing plaintiff's property under a facially void warrant, prior to a full and fair judicial hearing, defendant Penning deprived plaintiff of his Fourteenth Amendment right of due process.
Complaint, pp. 6–8.

5. The court assumes Penning means that his search was "duplicative" of a prior private search. While "duplicative" means "[h]aving the quality of doubling; producing two instead of one," 1 *The Shorter Oxford English Dictionary* 618 (3d ed. 1973; rev. 1985), "duplicitous" means, in the most usual sense, "deceitful[ ], [involving] double dealing." *Id.* The court assumes Penning did not mean that his search was intended to deceive anyone.

rather, DePugh presents evidence that it had been left in the care of a friend and business associate of many years, who was the lease-holder of the property searched. DePugh also asserts that the bank could not give or appear to give valid consent to any search, because it had no present possessory interest in the property searched and this situation was known to Penning.

## II. STANDARDS FOR SUMMARY JUDGMENT

The Eighth Circuit Court of Appeals recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure have authorized for nearly 60 years "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini*, 900 F.2d at 1238 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986)); *Hartnagel v. Norman*, 953 F.2d 394, 396 (8th Cir.1992).

The standard for granting summary judgment is well established. *Rule* 56 of the Federal Rules of Civil Procedure states in pertinent part:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

*Fed.R.Civ.P.* 56(b) & (c) (emphasis added); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Munz v. Michael*, 28 F.3d 795, 798 (8th Cir.1994); *Roth v. U.S.S. Great Lakes Fleet, Inc.*, 25 F.3d 707, 708 (8th Cir.1994); *Cole v. Bone*, 993 F.2d 1328, 1331 (8th Cir.1993); *Woodsmith Publishing Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir.1990); *Wabun–Inini*, 900 F.2d at 1238 (citing *Fed.R.Civ.P.* 56(c)).[6] A court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Munz v. Michael*, 28 F.3d 795, 796 (8th Cir.1994); *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir.1994); *Johnson v. Group Health Plan, Inc.*, 994 F.2d 543, 545 (8th Cir.1993); *Burk v. Beene*, 948 F.2d 489, 492 (8th Cir.1991); *Coday v. City of Springfield*, 939 F.2d 666, 667 (8th Cir.1991), *cert. denied*, 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992).

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for [its] motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53); *see also Reed v. Woodruff County, Ark.*, 7 F.3d 808, 810 (8th Cir. 1993). The moving party is not required by

---

**6.** An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Hartnagel*, 953 F.2d at 394.

*Rule* 56 to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

"When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. The non-moving party is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Fed. R.Civ.P.* 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.' " *Metge v. Baehler,* 762 F.2d 621, 625 (8th Cir. 1985) (quoting *Impro Products, Inc. v. Herrick,* 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied sub nom. Metge v. Bankers Trust Co.,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). The necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir. 1994).

In *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11, *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53, and *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56, the Supreme Court established that a summary judgment motion should be interpreted by the trial court to accomplish its purpose of disposing of factually unsupported claims, and the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). The trial court, therefore, must "assess the adequacy of the nonmovants' response and whether that

showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel,* 953 F.2d at 396 (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). If the nonmoving party fails to make a sufficient showing of an essential element of a claim with respect to which it has the burden of proof, then the moving party is "entitled to judgment as a matter of law." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *Woodsmith,* 904 F.2d at 1247. However, if the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Burk,* 948 F.2d at 492; *Woodsmith,* 904 F.2d at 1247. With these standards in mind, the court turns to consideration of the parties' cross-motions for summary judgment.

### III. FINDINGS OF FACT

#### A. Undisputed Facts

The record reveals that the following facts are undisputed. For some time prior to October 22, 1991, when the search giving rise to plaintiff's lawsuit occurred, DePugh had lived at a building in Reinbeck, Iowa, which served both as his place of business and residence. However, before the search occurred, DePugh had ceased living in the building in Reinbeck, although some of his personal property remained there. The building was still in use as a place of business for a company operated by DePugh's former business associate, David Powell. DePugh had no continuing interest in the property, although he was still serving as a consultant to Powell's business and from time to time used the living quarters in the building during visits to Reinbeck. David Powell retained a leasehold on the property. Although at the time of the search, Penning asserts that the building's owner, Lincoln Savings Bank of Reinbeck, considered Powell to be in default on the lease and was trying to recover the premises from him, Powell continued to occupy the building for approximately another ten months.

On October 22, 1991, Grundy County Sheriff Penning sought and obtained a search warrant for DePugh's former residence. The application for the warrant was based

almost exclusively on a tip from a confidential informant, now acknowledged to be an employee of Lincoln Savings Bank. The application for the warrant states that information from the confidential informant indicated the presence in the building of "Minute Men" literature and a box of photographic materials on top of which was a photograph of a juvenile female in a swimming suit.[7]

The search warrant authorized search for and seizure of a

[s]torage box approx 3 ft × 15 in containing 'Minute Men' literature and a box containing photographs of models, cassette tapes, film, and address book[.]

Search Warrant, Appendix 1 to Complaint. The grounds for seizure of the material were that it was

Property that has been obtained in violation of law.

Property, the possession of which is illegal.

Property used or possessed with the intent to be used as the means of committing a public offense or concealed to prevent an offense from being discovered.

Property relevant and material as evidence in a criminal prosecution.

*Id.* There is no clarification of any of these grounds for seizure nor any indication of any support for the conclusion that any of the property was obtained in violation of the law, was illegal to possess, could be used to commit a public offense, or was evidence of criminal activity.

The search warrant is signed by magistrate McCarter. *Id.* The Inventory of Seized Property describes the following items as having been seized pursuant to the warrant:

1. Cardboard box w/film, video, pictures, address book

2. Plastic basket w/film and misc. papers/receipts

3. letter from Mrs. Hazel Dennison

4. cardboard box w/Minutemen literature

Inventory of Seized Property, Appendix 2 to Complaint. The presumed owner of all of the items of property seized is identified in the inventory as Robert DePugh. *Id.* The seizing officer is identified as Rick Penning, and his signature appears on the inventory. *Id.* It is undisputed that items not identified in the warrant were also seized in the October 22, 1991, search.

On February 20, 1992, DePugh was convicted on criminal charges unrelated to execution of this search warrant in the United States District Court for the Western Division of Missouri. At the time this complaint was filed DePugh was incarcerated at the Englewood Federal Corrections Institution in Littleton, Colorado. DePugh has since been released from custody. DePugh asserts that he learned of the search and seizure of his property from the building in

---

7. Because a significant question in this lawsuit is whether or not the application for the warrant stated probable cause for the search and seizure challenged here, the court includes in its entirety the narrative portion of "Attachment 'A'" provided in support of the warrant:

Your applicant conducted an investigation and received information from other officers and/or other sources as follows:

The Grundy County Sheriff's Dept. investigated Robert DePugh, owner of Harmony Foods[,] in 1988 as to his involvement in taking photographs of juvenile girls depicting partial nudity.

Various photographs and information was [sic] obtained but DePugh was not prosecuted due to lack of evidence.

DePugh later filed bankruptcy and abandoned Harmony Foods and Lincoln Savings Bank at Reinbeck recovered the building and equipment.

Lincoln Savings Bank rented the building to Dave Powell, who established Interstate Foods, as he previously worked with DePugh.

Lincoln Savings Bank is currently in the process of evicting Interstate Foods for delinquency in rent payments and also filing forfeiture proceedings on the equipment as Powell is delinquent in those payments.

Confidential informant was in Interstate Foods last week and observed two boxes that C/I determined to be contraband.

C/I briefly examined top items in each box and concluded the storage box contained 'Minutemen' literature and the other box contained a photo of a young female in bathing suit and other items such as film, cassettes, and address book.

Robert DePugh was arrested in Polk County in September of this year for sexual exploitation of minors after authorities uncovered over a thousand photographs of young girls, some in pre-teens and depicting nudity.

Reinbeck, Iowa, only late in 1992 or early in 1993, while he was still incarcerated, during a telephone conversation with David Powell. DePugh states that Powell subsequently sent him copies of the search warrant and inventory, which he received on January 29, 1993. DePugh wrote to Sheriff Penning requesting return of the property and to magistrate McCarter requesting copies of any affidavit of probable cause on which the magistrate had relied in issuing the warrant, but received no answer. Next, DePugh wrote Assistant County Attorney Geer requesting return of his property and copies of materials in support of the application for the search warrant. In reply, DePugh received a letter dated March 5, 1993, which advised him that he could receive back "any property ceased [sic] which you can show belongs to you and which has now [sic] evidentiary value in any pending or potential legal proceedings." The letter from Geer further advised DePugh to "file an application for return of property and documents, which application will be set for hearing." Appendix 3 to Complaint. DePugh never made such an application. The property seized remains in the possession of Iowa law enforcement officials.

### B. Disputed Facts

The parties have each advanced a number of disputes of fact they argue are sufficiently material to require denial of their opponent's motion for summary judgment, but no impediment to the grant of their own motion for summary judgment. Penning denies that David Powell had a possessory interest in the building searched or that he was in compliance with his lease for the building at the time of the search. However, the record shows that Powell continued to occupy the premises for some ten months after the search and seizure in question here. Penning asserts that Lincoln Savings Bank, as the owner of the building, had the sole possessory interest at the time of the search. However, Penning's affidavit in support of probable cause for the warrant demonstrates that he knew that the bank was only in the process of evicting Powell. Although Penning indicated in the seizure inventory that the presumptive owner of the property seized was DePugh, Penning now asserts that the

property seized was abandoned in the building prior to the search. Penning also asserts that he made no determination that the items sought pursuant to the warrant were contraband, but that it was instead the confidential informant who determined that the items were contraband.

DePugh asserts that he has never provided a complete inventory of his personal property left in the building in Reinbeck, Iowa, which could establish that certain items seized but not listed in his inventory were abandoned. Rather, he asserts that any incompleteness of his inventory of items left in the building is the result of faulty memory, not an intention to abandon anything. DePugh vehemently denies the suggestion that anyone but Powell had any authority over the building searched at the time of the search, and further denies that Lincoln Savings Bank was in the process of evicting Powell at the time of the search. DePugh asserts that he retained a privacy interest in the building searched, because he remained a consultant for Powell's business and from time to time used the living quarters of the building in Reinbeck, Iowa.

The court finds that Lincoln Savings Bank had no present possessory interest in the premises at the time of the search, because the bank had only begun, not concluded, eviction proceedings against Powell and Powell in fact occupied the premises for another ten months. The court finds further that there is no genuine issue of material fact that the property seized was not abandoned, nor was it contraband, issues which will be discussed more fully below, beginning at page 34, and page 51, respectively.

DePugh disputes the assertion that John Stull observed most of the items ultimately seized on the ground that all of the evidence indicates that Stull made only a superficial observation about the contents of certain boxes by looking at the top items in those boxes. DePugh also contends that there is no evidence that John Stull or any bank official was qualified to determine that anything in the building searched or that any of the property seized was contraband. DePugh also denies that all of the items seized were in plain view or that they were of obvious value as evidence of criminal con-

duct. DePugh makes a number of other assertions as disputes of fact that this court deems to be disagreements with the legal inferences Penning seeks to draw from the facts. The court will not discuss those purported disputes of fact here.

However, the court finds that there is a dispute concerning who exactly was the confidential informant in this case and whether that confidential informant actually had been in the building prior to Penning's search. Although the warrant application indicates that the confidential informant "was in Interstate Foods last week and observed two boxes that C/I determined to be contraband," the record suggests that the confidential informant was not actually the person who had been in the building or made any of the observations relied on in the application for the warrant. A letter from Penning to his attorney, provided as an exhibit by DePugh in support of his resistance to Penning's cross-motion for summary judgment, states that Penning was contacted by Gerald Monk, an attorney for Lincoln Savings Bank, who stated that a bank official, John Stull, had been in the building in question and had made the observations used in the warrant application. Penning has also stated in his response to DePugh's statement of undisputed facts that he does not recall whether or not he contacted Stull directly prior to applying for the warrant. There is therefore a dispute of fact as to the identity of the confidential informant, either as John Stull or as Gerald Monk, and the extent of that confidential informant's first-hand knowledge of items in the building searched. The court will consider in the pertinent place whether this dispute, or any of the other disputes of fact pressed by the parties, creates a genuine issue of *material* fact. *See Fed.R.Civ.P.* 56(c); *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Matsushita Elec. Indus. Co.,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56; *Hartnagel,* 953 F.2d at 396.

### IV. LEGAL ANALYSIS

#### (Including Some Further Findings Of Fact)

Each of the parties has advanced a number of grounds either for granting his own mo-

tion for summary judgment or for denying his opponent's motion. The court feels compelled to consider each of these arguments, but will do so in the fashion the court deems best suited to a logical disposition of this matter, not necessarily in the order in which the parties have presented their respective cases. For example, the court concludes that treating separately the cross-motions for summary judgment, which are necessarily founded on similar bodies of fact and interwoven legal arguments, would be inefficient and artificial. The court will therefore consider first Penning's arguments that DePugh's claims are flawed *ab initio,* for lack of standing and insufficient allegations of damages, before turning to other arguments advanced by the parties.

#### A. Standing

Penning argues that DePugh does not have standing to complain about the search or seizure in question here, because he had no privacy interest in the area searched or the items seized. Penning states that although DePugh asserts a subjective expectation of privacy, there is nothing in the record that makes such an expectation of privacy objectively reasonable. Penning points to the fact that, under the lease between Lincoln Savings Bank and David Powell, DePugh has no interest in or authority over the premises searched. Penning also asserts that the items seized were simply abandoned by DePugh, because he had no control over them and historically had ceased using them. DePugh counters that he had a *property* interest in the items seized that gives him standing to complain of the seizure. He argues that at no time did he abandon the items in the premises searched, but instead left them in care of a friend and business associate.

The Eighth Circuit Court of Appeals recently listed the factors relevant to the determination of standing to assert a Fourth Amendment[8] claim in *United States v. Gomez,* 16 F.3d 254 (8th Cir.1994). That list is as the follows:

---

8. DePugh has stated his claims in terms of violations of the First and Fourteenth Amendments as

ownership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case. *Gomez,* 16 F.3d at 256 (citing *United States v. Sanchez,* 943 F.2d 110, 113 (1st Cir.1991)). This court views the first two of these factors to emphasize property interests, while the last two emphasize privacy interests, and the middle two partake of both the property and privacy interests protected by the Fourth Amendment. *See Soldal v. Cook County,* —— U.S. ——, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) (confirming that the Fourth Amendment protects *property* as well as privacy interests). Thus, this court will consider both DePugh's privacy and property interests.

### 1. *Expectation of privacy*

 A person's Fourth Amendment rights cannot be violated by a search unless the person has a legitimate expectation of privacy in the area or items searched. *Ra-kas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978) (the "capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place, but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place," citing *United States v. Chadwick,* 433 U.S. 1, 7, 97 S.Ct. 2476, 2481, 53 L.Ed.2d 538 (1977); *United States v. White,* 401 U.S. 745, 752, 91 S.Ct. 1122, 1126, 28 L.Ed.2d 453 (1971); *Katz v. United States,* 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967); see *United States v. Stallings,* 28 F.3d 58, 60 (8th Cir. 1994); *United States v. Knoll,* 16 F.3d 1313, 1321 (2d Cir.1994); *Gomez,* 16 F.3d at 256. It is clear that Fourth Amendment rights are personal and may not be vicariously asserted. *See United States v. Payner,* 447 U.S. 727, 731, 100 S.Ct. 2439, 2444, 65 L.Ed.2d 468 (1980) (a person's "Fourth Amendment rights are violated only when the challenged conduct invaded *his* legitimate expectation of privacy rather than that of a third party," with emphasis in the original, citing *Rakas,* 439 U.S. at 143, 99 S.Ct. at 430; *Combs v. United States,* 408 U.S. 224, 227, 92 S.Ct. 2284, 2286, 33 L.Ed.2d 308 (1972); *Mancusi*

---

well as the Fourth. However, in similar circumstances, courts have considered the extent to which the proper adherence to the Fourth Amendment will protect the complaining party's First and Fourteenth Amendment interests. *See, e.g., Fort Wayne Books, Inc. v. Indiana,* 489 U.S. 46, 63, 109 S.Ct. 916, 927, 103 L.Ed.2d 34 (1989) (First and Fourteenth Amendment and seizure under the Fourth Amendment); *New York v. P.J. Video, Inc.,* 475 U.S. 868, 875, 106 S.Ct. 1610, 1615, 89 L.Ed.2d 871 (1986) (First Amendment and probable cause under the Fourth Amendment); *Zurcher v. Stanford Daily,* 436 U.S. 547, 564, 98 S.Ct. 1970, 1980–81, 56 L.Ed.2d 525 (1978) (First Amendment and Fourth Amendment particularity requirement); *Stanford v. Texas,* 379 U.S. 476, 485, 85 S.Ct. 506, 511–12, 13 L.Ed.2d 431 (1965) (First Amendment and Fourth Amendment particularity requirement); *Supreme Video v. Schauz,* 15 F.3d 1435, 1442 (7th Cir.1994) (First and Fourteenth Amendment and seizure under the Fourth Amendment); *United States v. DePugh,* 993 F.2d 1362, 1362 (8th Cir.1993) (Fourth Amendment standards for material presumptively protected by First Amendment); *United States v. Koelling,* 992 F.2d 817, 821 (8th Cir.1993) (First Amendment and Fourth Amendment particularity requirement); *United States v. Levinson,* 991 F.2d 508, 510 (9th Cir.1993) (First Amendment and probable cause under Fourth Amendment); *United States v. Jenkins,* 974 F.2d 32, 35 (5th Cir.1992) (First and Fourteenth Amendment issues under Fourth Amendment seizure); *United States v. Apker,* 705 F.2d 293, 300–01 (8th Cir.1983) (First Amendment and Fourth Amendment particularity requirement), *cert. denied,* 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984). This court will follow suit, because it finds that most of De-Pugh's First and Fourteenth Amendment claims are encompassed within Fourth Amendment protections.

The one exception is DePugh's "fifth cause of action," which alleges violation of DePugh's First Amendment right of access to the courts. This one claim fails for lack of proof. Nothing in the record indicates that DePugh was prevented from obtaining the name of a needed witness for defense in his criminal prosecution because of the search and seizure challenged here. DePugh did not identify the witness, or show that he had no other means of contacting the witness after his address book was seized, or in any way show prejudice resulting from the lack of this witness' testimony. Thus Penning is entitled to summary judgment on DePugh's "fifth cause of action" on the ground that there is no evidence to support such a claim.

*v. DeForte,* 392 U.S. 364, 368, 88 S.Ct. 2120, 2123–24, 20 L.Ed.2d 1154 (1968)); *Rakas,* 439 U.S. at 148–49, 99 S.Ct. at 433; *United States v. Jones,* 16 F.3d 275, 279 (8th Cir. 1994) (conspirator had no legitimate expectation of privacy in the house of another co-conspirator); *United States v. Gutberlet,* 939 F.2d 643, 646 (8th Cir.1991) (same); *United States v. Wright,* 826 F.2d 938, 945 (10th Cir.1987) ("Indeed, it is not grounds for suppression [of evidence allegedly seized in violation of the Fourth Amendment] at all that the reasonable expectation of privacy of a third party was even flagrantly violated," citing *Payner,* 447 U.S. 727, 100 S.Ct. 2439).

 Although an ownership or possessory interest in the premises is not necessarily required, the mere legitimate presence of the person on the searched premises by invitation or otherwise is not sufficient to create a protectable expectation of privacy. *Rakas,* 439 U.S. at 142–43, 99 S.Ct. at 429–30; *United States v. Meyer,* 656 F.2d 979, 981 (5th Cir.1981), *cert. denied,* 464 U.S. 1001, 104 S.Ct. 507, 78 L.Ed.2d 697 (1983). Rather, in order to show a legitimate expectation of privacy, the person challenging the search must show that [he or she] had a subjective expectation of privacy in the searched premises or items and that the expectation of privacy is one that society is willing to accept. *See Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979); *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516–17, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring); *United States v. Ford,* 34 F.3d 992, 995 (11th Cir. 1994); *Stallings,* 28 F.3d at 60;[9] *Zimmerman v. Bishop Estate,* 25 F.3d 784, 787 (9th Cir.1994); *United States v. Kiser,* 948 F.2d 418, 423 (8th Cir.1991), *cert. denied,* 503 U.S. 983, 112 S.Ct. 1666, 118 L.Ed.2d 387 (1992); *United States v. Monie,* 907 F.2d 793, 794 (8th Cir.1990); *United States v. Chuang,* 897 F.2d 646, 649 (2d Cir.), *cert. denied,* 498 U.S.

824, 111 S.Ct. 77, 112 L.Ed.2d 50 (1990). Thus, in *Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), the Supreme Court held that "status as an overnight guest is alone enough to show that [the claimant] had an expectation of privacy in the home that society is prepared to recognize as reasonable." *Olson,* 495 U.S. at 96–97, 110 S.Ct. at 1688. A casual visitor has a lesser expectation of privacy, but may also challenge a search if his own property is seized. *Rakas,* 439 U.S. at 142 n. 11, 99 S.Ct. at 430 n. 11.

The threshold issue, on which DePugh bears the burden, is whether he had a subjective expectation of privacy in the premises or items searched here. *See Rawlings v. Kentucky,* 448 U.S. 98, 104–05, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980); *Rakas,* 439 U.S. at 131 n. 1, 99 S.Ct. at 424 n. 1; *Stallings,* 28 F.3d at 60; *United States v. Macklin,* 902 F.2d 1320, 1330 (8th Cir.1990); *United States v. Fahnbulleh,* 748 F.2d 473, 477 (8th Cir.1984), *cert. denied,* 471 U.S. 1139, 105 S.Ct. 2685, 86 L.Ed.2d 702 (1985). Even where the person claiming violation of the right has a subjective expectation of privacy, however, that expectation must be objectively reasonable. *See Zimmerman,* 25 F.3d at 787 (squatters and guest of squatters had no objectively reasonable expectation of privacy, because none of them had a legal right to occupy the land and build structures on it); *and compare United States v. Wilson,* 36 F.3d 1298, 1303 (5th Cir.1994) (person retained subjective and reasonable expectation of privacy in checkbook found in trash can in friend's residence; because the person was an overnight guest of the resident, he could also claim standing under *Olson,* 495 U.S. 91, 110 S.Ct. 1684).

The Supreme Court has held that "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a

---

**9.** In *Stallings,* the Eighth Circuit Court of Appeals formulated the test as consisting of two parts: "(1) whether the petitioner has asserted a subjective expectation of privacy, and (2) whether the petitioner's subjective expectation is objectively reasonable." *Stallings,* 28 F.3d at 60 (citing *United States v. Kiser,* 948 F.2d 418, 423 (8th Cir.1991), *cert. denied,* 503 U.S. 983, 112 S.Ct. 1666, 118 L.Ed.2d 387 (1992), citing in turn *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979), and *California v. Ciraolo,* 476 U.S. 207, 211, 106 S.Ct. 1809, 1811–12, 90 L.Ed.2d 210 (1986)). The court stated further that " '[t]he first part of the test is a question of fact that we review under a clearly erroneous standard, while the second part is a question of law, dictating de novo review.' " *Id.* (quoting *Kiser,* 948 F.2d at 423).

subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Katz*, 389 U.S. at 351, 88 S.Ct. at 511; *see also Stallings*, 28 F.3d at 61 (quoting *Katz* ). Thus, "[t]he test of legitimacy is not whether the individual chooses to conceal assertedly 'private' activity. Rather, the correct inquiry is whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment." *Oliver v. United States*, 466 U.S. 170, 182–83, 104 S.Ct. 1735, 1738, 80 L.Ed.2d 214 (1984).

■ Whether a party has a legitimate expectation of privacy therefore depends on several factors. Courts have looked to whether the party had a possessory interest in the things seized or place searched, whether the party has the right to exclude others from that place, whether the party has exhibited a subjective expectation that the place would remain free from governmental intrusion, whether the party took normal precautions to maintain the party's privacy, and whether the party was legitimately on the premises. *See, e.g., Rawlings*, 448 U.S. at 105, 100 S.Ct. at 2561 (Fourth Amendment protections apply when person claiming violation of the Amendment took "normal precautions to maintain his privacy"); *United States v. Nabors*, 761 F.2d 465, 469 (8th Cir.1985) (listing all of above factors and finding that a casual guest did not have a legitimate privacy interest at a host's home); *United States v. Haydel*, 649 F.2d 1152, 1155 (5th Cir.1981) (finding that the defendant

possessed a legitimate expectation of privacy in his parents' home); *see also Gomez*, 16 F.3d at 256 (holding that defendant did not have a sufficient expectation of privacy in an automobile he was driving). A person seeking to challenge a search of a commercial premises has the burden of establishing a reasonable expectation of privacy in the premises. *See Rakas*, 439 U.S. at 130 n. 1, 99 S.Ct. at 424 n. 1; *Gomez*, 16 F.3d at 256; *United States v. Acosta*, 965 F.2d 1248, 1256 n. 9 (3d Cir.1992).[10]

■ Applying the factors identified, *e.g.*, in *Nabors* to this case, it is apparent that DePugh had no possessory interest in the place searched. He no longer had a leasehold or other possessory interest in the property searched, and was not named as a tenant in the lease held by David Powell. He was at most a casual visitor to the premises. A person's legitimate presence on the searched premises, however, without more, is insufficient to establish standing. *See Rakas*, 439 U.S. at 142–43, 99 S.Ct. at 429–30; *United States v. Ford*, 34 F.3d 992, 995 (11th Cir. 1994) (only owners, lessees, and occupants who can demonstrate significant and current interest in the searched premises have an expectation of privacy sufficient to confer standing to object to search, citing *United States v. Garcia*, 741 F.2d 363, 366 (11th Cir.1984)); *United States v. Antone*, 753 F.2d 1301, 1306 (5th Cir.1985) (same). DePugh plainly had no right to exclude others from the place searched. *Nabors*, 761 F.2d at 469.

10. The court finds that it must distinguish a case that at least initially appears to be on point with the present one. In *Dickens v. Lewis*, 750 F.2d 1251 (5th Cir.1984), a person left certain items at a business, and those items subsequently became the target of a search. DePugh finds himself in a similar position. The court held that the plaintiff in an action under 42 U.S.C. § 1985(3) alleging violation of the Fourth and Fifth Amendments as the result of the seizure of his property

ha[d] no standing to challenge any search of [the business] premises because he ha[d] no legitimate expectation of privacy in the premises of a business belonging to others. *See Rawlings v. Kentucky*, 448 U.S. 98, [105] 100 S.Ct. 2556, 2562, 65 L.Ed.2d 633 (1980). The fact that his property became the "target" of the search is irrelevant. *Rakas v. Illinois*, 439 U.S. 128, [134–38] 99 S.Ct. 421, 426–427, 58

L.Ed.2d 387 (1978). The agents did not intrude on any individual's legitimate expectations of privacy, and hence there was no search subject to the fourth amendment's restrictions. *Illinois v. Andreas*, 463 U.S. 765, [768–69], 103 S.Ct. 3319, 3323, 77 L.Ed.2d 1003 (1983).

*Dickens*, 750 F.2d at 1254. However, in *Dickens*, the items left by the claimant had been left at the business for modification, *i.e.*, for services provided by the business. *Id.* DePugh, on the other hand, left his property at Powell's business for reasons completely unrelated to Powell's business. DePugh's relationship to Powell and his business is therefore more akin to the situation in, *e.g.*, *Olson*, where he was a casual visitor and sometime overnight guest who left personal property in the personal care of the occupant of the premises.

■ However, DePugh may have exhibited a subjective expectation that the place would remain free from governmental intrusion by selecting it as a place in which his property could be safely kept. *Id.* DePugh did not pick a public area in which to dispose his property, or one open to public view, even though the place he selected was a business, and his choice was with the permission of the occupant. *Id.* It was not the business aspect of the location that was relevant to DePugh's choice, but the control of the premises by a long-time friend and business associate. Thus, the fact that it was a business location of another is insufficient in these circumstances to remove his expectation of privacy. *Cf. Dickens,* 750 F.2d at 1254. However, DePugh's expectation of privacy in the premises does not rise to the level reasonably enjoyed by an owner, overnight guest, or other person with some interest in occupancy. *See Rakas,* 439 U.S. at 142–43, 99 S.Ct. at 429–30; *Ford,* 34 F.3d at 995; *Antone,* 753 F.2d at 1306. On balance, the court concludes that DePugh had no legitimate expectation of privacy in the place searched.

■ However, the court will also consider whether DePugh had a legitimate privacy interest in the *items* searched and seized. *Rakas,* 439 U.S. at 142–43, 99 S.Ct. at 429–30. The parties dispute whether DePugh had a possessory interest in those items, *Nabors,* 761 F.2d at 469, a matter to which the court will turn in some detail below. However, DePugh took normal precautions to maintain his privacy interest in the property by entrusting it to the care of a friend and business associate, rather than simply leaving it in an otherwise abandoned building. *Id.*[11] By contrast, the complaining person in *Stallings* had left a tote-bag containing drugs in some brush in a neighbor's field without obtaining permission to do so, and the Eighth Circuit Court of Appeals concluded that the person had no objectively reasonable expectation of privacy in the tote bag. *Stallings,* 28 F.3d at 61. Here, the property

was left in a building leased by a friend and business associate with that friend's permission and acceptance of responsibility for it. An expectation of privacy of property left in care of a friend is objectively reasonable, *cf. Stallings,* 28 F.3d at 61, and is certainly a normal precaution to maintain one's privacy. *Nabors,* 761 F.2d at 469. To put it another way, DePugh did not knowingly expose these items to the public, but sought to preserve them as private. *Katz,* 389 U.S. at 351.

Although the court concludes that DePugh had no legitimate expectation of privacy in the place searched, he had such an expectation as to the property seized. Yet the court will not rely on this conclusion alone, but will also turn its attention specifically to whether DePugh had a property interest in the items seized sufficient to provide standing for him to challenge their seizure under the Fourth Amendment.

### 2. Property interest

Even had the court found DePugh had no *privacy* interest to protect, that would not end its inquiry. In *Soldal v. Cook County,* —— U.S. ——, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992), the Supreme Court confirmed that the Fourth Amendment protects *property* as well as privacy interests. *Soldal,* —— U.S. at ——, 113 S.Ct. at 549; *Hroch v. City of Omaha,* 4 F.3d 693, 696 (8th Cir.1993). Courts often end their Fourth Amendment inquiry with consideration of the expectation of privacy in the place searched, because the person claiming violation of Fourth Amendment rights denies any property interest in the item seized, usually contraband. *See, e.g., Gomez,* 16 F.3d at 256 (claimant denied interest in cocaine found in car and court found no privacy interest in vehicle for which claimant was not the owner because claimant's use upon the authority of the owner did not create an expectation of privacy); *Sanchez,* 943 F.2d at 114 (court found the defendant's lack of authority from the owner of the car and his denial of an interest in the drugs

---

11. In *United States v. Perea,* 986 F.2d 633, 639–41 (2d Cir.1993), the Second Circuit Court of Appeals considered in some detail the question of whether the person to whom property is entrusted, *i.e.,* the bailee of the property, has standing under the Fourth Amendment to challenge seizure of the property, finding that the bailee not only has standing, but may have a duty, to make such a challenge.

contained in the care crucial to its determination that defendant lacked standing to assert Fourth Amendment claim). However, courts must determine whether a *seizure* of the property in question is reasonable as well as whether a search of the place where it was found is reasonable. *Hroch,* 4 F.3d at 697 (defendant's seizure of plaintiff's property was reasonable in light of the "careful balancing of governmental and private interests" required by *Soldal*); *see also Bonds v. Cox,* 20 F.3d 697, 703 (6th Cir.1994) (considering expectation of privacy and property interests as separately establishing standing to assert violations of the Fourth Amendment, citing *Soldal*).

In *United States v. Padilla,* — U.S. —, 113 S.Ct. 1936, 123 L.Ed.2d 635 (1993), the Supreme Court expressly identified the alternative nature of the interests sufficient to provide standing for a Fourth Amendment claim:

> The case is remanded so that the court may consider whether each respondent had *either* a property interest protected by the Fourth Amendment that was interfered with by the [government officials], *or* a reasonable expectation of privacy that was invaded by the search [of the property in question].

*Padilla,* — U.S. at —, 113 S.Ct. at 1939 (emphasis added) (citing cases establishing the alternative nature of these interests for the purposes of standing under the Fourth Amendment).[12]

In *Soldal,* the Court rejected interpretation of its precedents as suggesting that the Fourth Amendment is only marginally concerned with property rights. *Soldal,* — U.S. at —, 113 S.Ct. at 545. Rather, "the message of those cases is that property rights are not the sole measure of Fourth Amendment violations." *Id.* The Court was "unconvinced that any of the Court's prior cases supports the view that the Fourth Amendment protects against unreasonable seizures of property only where privacy or liberty is also implicated." *Id.* The Court reasoned further that its "plain view" cases made such a view untenable, because seizure of items in plain view is still subjected to rigorous Fourth Amendment standards to avoid "inva[sion of] the owner's possessory interest." *Id.* at —, 113 S.Ct. at 546 (citing *Horton v. California,* 496 U.S. 128, 134, 110 S.Ct. 2301, 2306, 110 L.Ed.2d 112 (1990); *Texas v. Brown,* 460 U.S. 730, 739 (1983) (opinion of Rehnquist, J.)). The Court thus reiterated that the "central requirement" of the Fourth Amendment is "reasonableness" of the government's intrusion upon the individual's rights. *Id.*[13]

Similarly, in *Bonds,* the Sixth Circuit Court of Appeals found that a person asserting Fourth Amendment rights had no reasonable expectation of privacy in a house in which she allowed another to live, and therefore did not have standing to challenge the *search* of the house. *Bonds,* 20 F.3d at 701–02. Nonetheless, the court found that the same person had standing to challenge the *seizure* of her property from the house. *Id.* at 702. The court wrote

> [t]he Fourth Amendment protects against seizure of property even if it occurs in a

---

12. The Court in *Padilla* cited and discussed *Soldal,* — U.S. —, 113 S.Ct. 538; *Rawlings,* 448 U.S. 98, 100 S.Ct. 2556; *Rakas,* 439 U.S. 128, 99 S.Ct. 421; *Alderman v. United States,* 394 U.S. 165, 171–72, 89 S.Ct. 961, 965–66, 22 L.Ed.2d 176 (1969). This view of the property rights of the owner of the property as conferring standing to challenge seizure even when the property is seized from premises of another where it is stored is not novel. *See, e.g., United States v. Jeffers,* 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951) (holding that a person has standing under the Fourth Amendment to challenge seizure of property owned or possessed by him and stored in the premises of another to which he had access).

13. In *Hummel–Jones v. Strope,* 25 F.3d 647 (8th Cir.1994), the Eighth Circuit Court of Appeals applied the "reasonableness" standard to "the 'when' and 'how' of otherwise legitimate law enforcement actions," finding that unreasonableness in these aspects of the search "may always render such actions unreasonable," and therefore violative of the Fourth Amendment. *Hummel–Jones,* 25 F.3d at 650 (citing *Tennessee v. Garner,* 471 U.S. 1, 7–8, 105 S.Ct. 1694, 1699–700, 85 L.Ed.2d 1 (1985); *Dalia v. United States,* 441 U.S. 238, 257–58, 99 S.Ct. 1682, 1693–94, 60 L.Ed.2d 177 (1979); *Zurcher v. Stanford Daily,* 436 U.S. 547, 559–60, 98 S.Ct. 1970, 1978–79, 56 L.Ed.2d 525 (1978); and *Go–Bart Importing Co. v. United States,* 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931)).

context in which privacy or liberty interests are not implicated. *Soldal,* —— U.S. at ——, 113 S.Ct. at 545. Thus, our finding that Bonds had no reasonable expectation of privacy in the house at 4174 Dunn Avenue does not affect our conclusion that Bonds has standing to challenge the seizure of her property [resulting from damage to the house].

*Bonds,* 20 F.3d at 702.

Thus, if DePugh has a possessory or property interest in the property seized, he has standing under the Fourth Amendment to complain about seizure of that property even if he has no standing to complain about the search of the premises from which the property was seized or to complain of the search or seizure of his items on privacy grounds. DePugh asserts that he has such a property or possessory interest, but Penning argues that the property seized was simply abandoned by DePugh.

#### a. Abandonment

A number of courts have held that an individual has no standing to complain about the search or seizure of property that he or she has voluntarily abandoned. *See, e.g., United States v. Quiroz-Hernandez,* 48 F.3d 858, 864 (5th Cir.1995) (citing Fifth Circuit cases to so hold); *United States v. Alvarez,* 6 F.3d 287, 289 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1384, 128 L.Ed.2d 59 (1994). Although the person asserting a Fourth Amendment right bears the burden of proving a legitimate expectation of privacy in the thing searched, the government bears the burden of proving that the person has abandoned the property in question. *United States v. Ramos,* 12 F.3d 1019, 1023 (11th Cir.1994). The district court's ruling as to abandonment is reviewed on a clearly erroneous standard. *United States v. Thompkins,* 998 F.2d 629, 632 (8th Cir.1993); *United States v. Ruiz,* 935 F.2d 982, 984 (8th Cir.1991).

In *Thompkins,* the Eighth Circuit Court of Appeals considered what factors evidenced abandonment:

In *Ruiz,* [935 F.2d at 984,] this Court heard an abandonment argument under similar facts. Upon arrival at a bus station, Ruiz had placed luggage containing drugs into the trunk of one car, then prepared to leave in another car. Police, who had been tipped as to Ruiz' arrival, stopped both cars and began questioning the occupants. Ruiz denied ownership of the luggage, and the driver of the car containing the bags allowed the officers to search them. On appeal, this Court affirmed the magistrate's ruling that Ruiz had voluntarily abandoned his privacy interest by denying ownership. The instant facts present even a more compelling argument for abandonment than those in *Ruiz*—because here Thompkins not only disclaimed ownership of the suitcase, but he then told officers to go ahead and search it. In *Ruiz* the defendant's mere disclaimer, then remaining silent while he watched the search, was held to constitute abandonment as to him. Indeed, it is clear that Thompkins did everything in his power to distance himself from the suitcase at issue here—and there is no evidence whatsoever (nor even a claim by Thompkin) to contradict the government's assertion that he had abandoned the suitcase at the time it was searched.

*Thompkins,* 998 F.2d at 632. Thus, the inquiry in *Thompkins* focused on disclaimers of ownership as evidence of a voluntary abandonment of property seized by law enforcement officials. However, in *Thompkins,* the appellate court noted that the district court "did not reach any conclusions on the issues of illegal seizure, consent, or standing—but simply stated that the government had "absolutely no right to open [the suitcase]." *Thompkins,* 998 F.2d at 632. Although the appellate court concluded that the suitcase in question was abandoned, it did not then directly declare that the criminal defendant had no standing to challenge its seizure, relying instead on a conclusion that the seizure was proper. *Id.* at 932–33. Obviously, if the property in question is abandoned, its seizure is proper, and the question of standing to challenge the seizure is moot.

Other circuit courts of appeals have formulated tests for abandonment in the specific context of determining the claimant's standing to challenge seizure of the property under the Fourth Amendment. In determining

whether there has been an abandonment, depriving the complaining party of standing to assert Fourth Amendment rights, the Eleventh Circuit Court of Appeals has focused on intent:

> [T]he " 'critical inquiry is "whether the person prejudiced by the search ... voluntarily discarded, left behind, or otherwise *relinquished his interest in the property* in question so that he could no longer retain a reasonable expectation of privacy with regard to it *at the time of the search.*" ' " *United States v. Winchester,* 916 F.2d 601, 603 (11th Cir.1990) (quoting *[United States v.] McKennon,* 814 F.2d [1539,] 1546 [ (11th Cir.1987) ] (citation omitted)). Whether abandonment occurred is a question of intent which may be inferred from acts, words and "other objective facts." *United States v. Pirolli,* 673 F.2d 1200, 1204 (11th Cir.), *cert. denied,* 459 U.S. 871, 103 S.Ct. 157, 74 L.Ed.2d 131 (1982).

*Ramos,* 12 F.3d at 1022–23 (emphasis in original). In *Ramos,* the court held that a person who overstayed the termination of his lease by four hours on New Year's Day had not thereby exhibited an intent to abandon a locked briefcase under his bed. *Id.* at 1024–26 (also surveying other cases on abandonment from the Eleventh Circuit). By way of contrast, the Eleventh Circuit Court of Appeals discussed its decision in *United States v. Lehder–Rivas,* 955 F.2d 1510 (11th Cir.), *cert. denied sub nom. Reed v. United States,* —— U.S. ——, 113 S.Ct. 347, 121 L.Ed.2d 262 (1992), in which it had held that a person who left a suitcase with a slight acquaintance, stating an intention to return for it within three months, but who did not retrieve it for more than a year before the acquaintance turned it over to the police, had abandoned the suitcase. *Ramos,* 12 F.3d at 1024 (citing *Lehder–Rivas,* 955 F.2d at 1522).

The Fifth Circuit Court of Appeals has also focused on intent to abandon property, for example, distinguishing between an intent to abandon property shown by repeated disclaimers of knowledge and ownership, from refusal to identify property followed by grudging admission of control or ownership of property, held insufficient to constitute abandonment. *United States v. Ponce,* 8 F.3d 989, 994–95 & n. 4 (5th Cir.1993) (finding no abandonment in refusal to identify vehicle to police followed by admission that vehicle in question was complainant's brother-in-law's when police started the vehicle with keys found in complainant's pocket, contrasting these circumstances with repeated disclaimers in *United States v. Roman,* 849 F.2d 920, 922 (5th Cir.1988)). In *Quiroz–Hernandez,* the same circuit court of appeals found abandonment depriving the person of standing to object to a search and seizure of a van on Fourth Amendment grounds where that person initially began to produce registration papers to the vehicle, but suddenly raised his hands and exclaimed that the van was stolen. *Quiroz–Hernandez,* 48 F.3d at 864. *See also Alvarez,* 6 F.3d at 289 (claimant voluntarily abandoned garment bag by stating that it belonged to his "old lady," and therefore had no standing to object to warrantless seizure of a pistol from the garment bag).

In *United States v. Hernandez,* 7 F.3d 944 (10th Cir.1993), the Tenth Circuit Court of Appeals looked primarily at "whether an individual has retained a reasonable expectation of privacy in the object" as the test for abandonment. *Hernandez,* 7 F.3d at 947. However, the expectation of privacy in question was further defined as "a question of intent which may be inferred from words, acts, and other objective facts." *Id.* (identifying cases from that circuit requiring voluntary intent to abandon the seized property). Thus, the court held that a person had shown intent to abandon property, a backpack, thereby depriving himself of standing to challenge seizure of the backpack, where the person had "elected to distance himself from the backpack upon boarding the bus and repeatedly failed to acknowledge ownership of the backpack after [a boarder patrol agent] repeatedly questioned the bus passengers regarding the backpack's ownership." *Id.*

Lack of intent to abandon the property seized is irrelevant where a third person validly takes possession of the property, and the claimant of the property is aware that such a consequence will follow from his or her actions. *United States v. Poulsen,* 41

F.3d 1330, 1331 (9th Cir.1994) (claimant was aware that storage facility manager would seize property for non-payment of rent, so claimant had no standing for Fourth Amendment challenge to manager's consent to police search and seizure of contents of locker after manager's seizure of contents for non-payment of rent). However, in *United States v. Wilson*, 36 F.3d 1298 (5th Cir.1994), the Fifth Circuit Court of Appeals held that a person who subsequently claimed a possessory interest in a checkbook found in a trash can *inside* a friend's residence had not abandoned the checkbook and therefore had standing to challenge its seizure. *Wilson*, 36 F.3d at 1303.

The Ninth Circuit Court of Appeals found that even property "unwittingly" left behind could be abandoned, looking not to intent, but to the "totality of the circumstances." *See United States v. Arias–Villanueva*, 998 F.2d 1491, 1501–02 (9th Cir.1993). In *Arias–Villanueva*, the criminal defendants challenged the seizure of a key left in a police car after an encounter with police. *Arias–Villanueva*, 998 F.2d at 1501. The appellate court found that the criminal defendants

> were never searched; they had no incentive to leave the key in the police car. The totality of the circumstances therefore shows that the key was abandoned. The defendants thus lack standing to challenge the seizure of the key. *See United States v. Nordling*, 804 F.2d 1466, 1469 (9th Cir. 1986).

*Id.* at 1501–02. The focus on the "totality of the circumstances" was the guiding principle for an earlier determination of abandonment by the Ninth Circuit Court of Appeals in *United States v. Gonzales*, 979 F.2d 711, 714 (9th Cir.1992). In *Gonzales*, the person subsequently objecting to search and seizure of bags by the border patrol was held to have abandoned the property, not just "unwittingly," but by disclaiming ownership of the bags and stating that he had no objection to their search even though the bags were sitting in close proximity to him. *Gonzales*, 979 F.2d at 714. The court held that in the "totality of the circumstances," the criminal defendant had abandoned the bags, and "therefore

lacked standing to object to a search of the bags." *Id.*

### b. Abandonment of the property seized here

 Under any of these tests, this court concludes that DePugh had not abandoned the property seized by Penning. DePugh never disclaimed ownership of the property or in any way distanced himself from it. *Thompkins*, 998 F.2d at 632; *Ruiz*, 935 F.2d at 984; *see also Quiroz–Hernandez*, 48 F.3d at 864; *Ponce*, 8 F.3d at 994–95 & n. 4; *Hernandez*, 7 F.3d at 947; *Alvarez*, 6 F.3d at 289; *Gonzales*, 979 F.2d at 714; *Roman*, 849 F.2d at 922. Although Penning asserts that DePugh "abandoned" the premises and its contents to the bank when he declared bankruptcy, Penning has presented absolutely no evidence that the property seized was "abandoned" at that time. Thus, Penning has failed to meet his burden to identify some portion of the record as showing a lack of a genuine issue that the property was abandoned. *Reed*, 7 F.3d at 810; *Hartnagel*, 953 F.2d at 395. Rather, the uncontradicted evidence in the record is that DePugh arranged to leave the property in question in Powell's keeping at the premises and has never disclaimed its ownership. Penning's argument that the property seized was simply abandoned "trash" is also wholly unsupported by the record. The items seized were boxed and stored in a privately occupied building by permission of the leaseholder. *See Wilson*, 36 F.3d at 1303. Either focusing on intent, or upon the "totality of the circumstances," the only conclusion this court can come to is that DePugh has continuously asserted ownership of his property and provided for its safekeeping with a friend and business associate. This court has already held that DePugh retained an expectation of privacy in the items seized. *See Hernandez*, 7 F.3d at 947. Consequently, DePugh has standing to pursue his claim of violation of his Fourth Amendment rights, because he had a possessory interest in the property seized. *Soldal*, ―― U.S. at ――, 113 S.Ct. at 545.

### 3. Summary On Standing

By way of summary on the issue of DePugh's standing to assert his Fourth Amend-

ment claims, the court returns to the factors stated by the Eighth Circuit Court of Appeals in *Gomez*, 16 F.3d at 256. As to ownership, possession and/or control of the area searched or item seized, *id.*, DePugh had no ownership or possessory interest in the *premises* searched; however, he retained an ownership interest in the *items* searched and seized. As to historical use of the property or item, *id.*, DePugh had never abandoned the property, but instead placed in it the safe-keeping of a friend and business associate of long-standing. DePugh was incarcerated at the time of the search, so that he could hardly be expected to be making regular use of these materials. Furthermore, DePugh never disclaimed ownership of the materials or in any way distanced himself from them. Admittedly, DePugh had no ability to regulate access to the premises, *id.*, but, in the totality of the circumstances surrounding the search, *id.*, it is apparent that DePugh had a subjective anticipation of privacy in the items seized and that expectation was objectively reasonable. *Id.* DePugh did not leave his materials at a business for service by that business, thus subjecting them to public view. Rather, the items seized were boxed and stored in a privately occupied building by permission of the leaseholder, and it was not the business of the leaseholder's company to store materials. In other words, DePugh's arrangements for the safekeeping of his materials were a purely private arrangement between himself and Powell. Consideration of the factors stated in *Gomez* thus leads to the conclusion that DePugh has standing to pursue his Fourth Amendment claims.

Because DePugh has standing to pursue his Fourth Amendment claims, Penning's cross-motion for summary judgment on the ground of lack of standing must be denied. The court therefore turns to Penning's assertion that DePugh's claims are fatally flawed by lack of evidence of harm.

### B. Lack Of Harm

As his next ground for summary judgment, Penning argues that DePugh "has no cause of action according to the holding in *Heck v. Humphrey*, — U.S. —, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)." Defendant's Memorandum In Support Of Cross–Motion For Summary Judgment ("Defendant's Memorandum"), at 4. Penning argues that *Heck* "made it clear that a Plaintiff in a 42 U.S.C. Section 1983 lawsuit based upon an alleged unlawful search and seizure must demonstrate compensable injury that is distinct from any injury attendant to being convicted of a crime and incarcerated." *Id.* Penning then argues that DePugh has identified as damages only that he was convicted because he could not get a witness's name owing to the seizure of the material in question here. Penning asserts that DePugh cannot get damages for his incarceration unless and until his conviction is vacated, impugned, overturned, or otherwise called into question, and that no such precondition has been met. Penning argues further that DePugh can show no other damage from the allegedly improper search and seizure of his property, and therefore asserts that DePugh has "no cause of action as his damages are based upon a criminal conviction." Defendant's Memorandum, at 3.

DePugh counters that he need show no damage beyond violation of his constitutional rights in order to sustain a cause of action, and that he has shown such a violation. Furthermore, DePugh argues that even if he can show no actual damages, a violation of his civil rights entitles him to recover at least nominal damages and possibly punitive damages.

The court finds that Penning has misapprehended the meaning of *Heck* and that no other authority supports the proposition he has asserted. In support of his argument, Penning quotes the following from *Heck*:

> In order to recover compensatory damages, however, the Section 1983 Plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, see *Memphis Community School District v. Stachura*, 477 U.S. 299, 308, 106 S.Ct. 2537, 2543, 91 L.Ed.2d 249 (1986), which, we hold today, does *not* encompass the "injury" of being convicted and imprisoned (until his conviction has been overturned).

*Heck,* —— U.S. at ——, n. 7, 114 S.Ct. at 2372 n. 7. Thus, what *Heck* makes clear is the requirement of "actual, compensable injury" for a plaintiff under § 1983 to "recover *compensatory damages.*" *Id.* *Heck* says nothing whatsoever about the viability of a civil rights plaintiff's claims based on lack of actual, compensable injury.

In *Carey v. Piphus,* 435 U.S. 247, 266, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978), the Supreme Court considered the availability of suits to vindicate civil rights even when the plaintiff could show no actual injury:

> Common-law courts traditionally have vindicated deprivations of certain "absolute" rights that are not shown to have caused actual injury through the award of a nominal sum of money. By making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed; but at the same time, it remains true to the principle that substantial damages should be awarded only to compensate actual injury or, in the case of exemplary or punitive damages, to deter or punish malicious deprivations of rights.
>
> Because the right to procedural due process is "absolute" in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury.

*Carey,* 435 U.S. at 266, 98 S.Ct. at 1053–54 (footnotes and citations omitted). The Court recognized, without contrary comment, that a number of federal appellate and district courts had approved the award of nominal damages under § 1983 where deprivations of constitutional rights were not shown to have caused actual injury. *Id.* at 266 n. 24, 98 S.Ct. at 1054 n. 24 (listing cases). The Court therefore held that even if the plaintiffs before it failed on remand to prevail on the merits of their claim that they had been wrongfully suspended from school, they "nevertheless w[ould] be entitled to recover nominal damages not to exceed one dollar" for the violation of their due process rights. *Id.* at 266–67, 98 S.Ct. at 1054. In *Memphis Community School Dist. v. Stachura,* 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986), the Court clarified that *Carey* had not authorized damages based on the abstract "value" of civil rights where no injury had been proven. *Memphis Community School Dist.,* 477 U.S. at 308–10, 106 S.Ct. at 2543–45. But, again, in *Memphis Community School Dist.,* the Court did *not* hold that lack of an injury, apart from the violation of rights itself, barred a plaintiff's cause of action pursuant to § 1983.

On at least two occasions, the Eighth Circuit Court of Appeals has held that nominal damages were proper where a § 1983 plaintiff could not show actual damages as the result of a violation of the Fourth Amendment. In *Wayland v. City of Springdale, Ark.,* 933 F.2d 668 (8th Cir.1991), the court held that the district court improperly granted summary judgment on the plaintiff's entire suit on the ground that the plaintiff had suffered no actual harm as the result of a "*Gerstein* violation," [14] concluding that if such a violation of the Fourth Amendment occurred, the plaintiff was entitled to nominal damages. *Wayland,* 933 F.2d at 671 n. 3. In *Hunter v. Auger,* 672 F.2d 668 (8th Cir. 1982), the court of appeals directed the district court to allow nominal damages for a Fourth Amendment violation resulting from strip searches of relatives visiting prisoners at the Iowa State Penitentiary even though the court found there was no showing of actual damages. *Hunter,* 672 F.2d at 677. Similarly, the Fifth Circuit Court of Appeals held that a violation of the Fourth Amendment entitles the § 1983 plaintiff at least to nominal damages, because the Fourth Amendment protects "absolute rights." *Melear v. Spears,* 862 F.2d 1177, 1186 (5th Cir.1989) ("In the absence of a successful defense, the existence of a Fourth Amend-

---

**14.** In *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the Supreme Court held that the Fourth Amendment requires prompt judicial determination of probable cause as a prerequisite to an extended restraint on liberty following an arrest without a warrant. *Gerstein,* 420 U.S. at 125, 95 S.Ct. at 868–69; *see also Wayland,* 933 F.2d at 670.

ment violation sufficiently predicates Section 1983 liability. A plaintiff is entitled to at least nominal damages for such a violation of an absolute right."); *see also Davet v. Maccarone*, 973 F.2d 22, 29 (1st Cir.1992) (discussing both *Carey* and *Memphis Community School Dist.* as providing a cause of action for nominal damages where constitutional rights have been violated); *Ruggiero v. Krzeminski*, 928 F.2d 558, 563 (2d Cir.1991) (court properly required jury to award nominal damages after jury had found in favor of plaintiffs on an unlawful search claim but nonetheless found that no compensable damages had been proved, stating "[w]e have directed lower courts to award nominal damages when substantive constitutional rights had been violated but no compensatory damages had been proved.").

Thus, even assuming that DePugh can show no actual damages as the result of a search and seizure violative of the Fourth Amendment, a proposition this court finds by no means certain, he is entitled to pursue his cause of action pursuant to § 1983 and, if a violation is shown, to obtain at least nominal damages and possibly punitive damages. Penning is not entitled to summary judgment on the basis of an alleged lack of harm.

**15.** DePugh has also cast his claims in terms of violations of the First Amendment, by placing prior restraints on expression and seizing materials presumptively protected by the First Amendment, and a violation of the Fourteenth Amendment, by failing to provide a pre-seizure hearing or pre-seizure viewing of the materials in question by the issuing judicial officer. However, all of these claims are also encompassed within De-Pugh's Fourth Amendment claims, as the following discussion should make clear. Therefore, these claims will not be treated separately from the issue of whether the Fourth Amendment was violated by failure to follow Fourth Amendment requirements when materials presumptively protected by the First Amendment are searched or seized.

In *Postscript Enterprises, Inc. v. Peach*, 878 F.2d 1114 (8th Cir.1989), the plaintiff, an operator of an adult bookstore, made similar claims: Postscript alleged that the state statutes in question violate its first, fourth, fifth and fourteenth amendment rights because they permitted and encouraged the police to seize materials presumptively protected by the first amendment to the United States Constitution. Such a seizure, Postscript argues, constitutes an impermissible prior restraint on the exercise of

Having dispensed with preliminary impediments to DePugh's causes of action asserted in Penning's cross-motion for summary judgment, the court may now consider the merits of the parties' cross-motions for summary judgment on substantive issues.

### C. DePugh's Substantive Claims

DePugh contends that there is no genuine issue of material fact that his Fourth Amendment rights were violated by the search and seizure in question here.[15] DePugh's principal assertion is that the warrant purportedly authorizing the search and seizure was wholly lacking in probable cause and that no officer executing the warrant could reasonably have believed that it was supported by probable cause. Penning counters, as grounds for denying DePugh's motion for summary judgment and granting his own, that the warrant demonstrably was supported by probable cause, and that, even if the warrant was invalid, there are a variety of reasons why a warrantless search and seizure in these circumstances was also constitutionally valid.

### 1. Fourth Amendment Requirements

■ The Fourth Amendment dictates that.

its first amendment rights as well as an unconstitutional seizure under the fourth amendment because the statutes in question do not provide for a pre-seizure adversary hearing.

*Postscript*, 878 F.2d at 1115. However, the court did not address these contentions, instead deciding the case on appeal on the basis of the *Younger* abstention doctrine. *Id.*

Although the court is not required in this lawsuit to determine whether the materials seized were "obscene," and therefore not protected by the First Amendment, *see Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), an issue running through the case is nonetheless whether the materials in question were presumptively protected by the First Amendment. Thus, it is instructive to state the Supreme Court's three-part test of obscenity stated in *Miller*:

(a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest[]; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political or scientific value.

*Miller*, 413 U.S. at 24, 93 S.Ct. at 2615.

The right of the people to be secure in their persons, houses, papers, and effects, against *unreasonable* searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const.Amend. IV (emphasis added). The reasonableness standard of the Fourth Amendment applies to any seizure by the government in any context. *Soldal v. Cook County*, ⸺ U.S. ⸺, ⸺⸺⸺, 113 S.Ct. 538, 543–48, 121 L.Ed.2d 450 (1992); *Coleman v. Watt*, 40 F.3d 255, 263 (8th Cir.1994). The Supreme Court has reiterated that "'reasonableness is still the ultimate standard' under the Fourth Amendment...." *Soldal*, ⸺ U.S. at ⸺, 113 S.Ct. at 549 (quoting *Camara v. Municipal Court of San Francisco*, 387 U.S. 523, 539, 87 S.Ct. 1727, 1736, 18 L.Ed.2d 930 (1967)). Thus, "the reasonableness determination will reflect a 'careful balancing of governmental and private interests.'" *Id.* at ⸺, 113 S.Ct. at 549 (citation omitted); *Coleman*, 40 F.3d at 263.

A property seizure occurs when the government's intrusion "meaningfully interferes" with an individual's possessory interest. *United States v. Jacobsen*, 466 U.S. 109, 120, 104 S.Ct. 1652, 1660, 80 L.Ed.2d 85 (1984); *Coleman*, 40 F.3d at 263; *Lesher v. Reed*, 12 F.3d 148, 150 (8th Cir.1994). Thus, "the reason why an officer might enter a house or effectuate a seizure is wholly irrelevant to the threshold question of whether the [Fourth] Amendment applies. What matters is the intrusion on the people's security from governmental interference." *Soldal*, ⸺ U.S. at ⸺, 113 S.Ct. at 548. Plainly, the Fourth Amendment applies here, because the search and seizure in question took place in a privately occupied building and resulted in "meaningful interference" with DePugh's possessory interest in the items seized. The court must therefore consider the various bases upon which the parties have argued that the search and seizure were, or were not, reasonable.

## 2. *Validity of the warrant and "probable cause"*

█ DePugh's principal challenge to the warrant in this case is that it was lacking in probable cause to believe that evidence of criminal activity would be found on the premises. In finding that "probable cause" exists to issue a warrant, a judge or magistrate must ordinarily determine that, in light of all of the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (enunciating this "totality of the circumstances" test); *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir.1995); *United States v. Olson*, 21 F.3d 847, 849 (8th Cir. 1994); *United States v. Bieri*, 21 F.3d 811, 815 (8th Cir.1994); *United States v. Koelling*, 992 F.2d 817, 823 (8th Cir.1993); *United States v. Tagbering*, 985 F.2d 946, 949 (8th Cir.1993); *United States v. Martin*, 866 F.2d 972, 976 (8th Cir.1989); *United States v. Reivich*, 793 F.2d 957, 959 (8th Cir.1986). The Eighth Circuit Court of Appeals has very recently formulated the test of probable cause in *Gates* as a determination that, in the totality of the circumstances, there is a "'fair probability that' (1) the items sought are connected to criminal activity and (2) the items sought will be found in the place to be searched." *United States v. Edmiston*, 46 F.3d 786, 789 (8th Cir.1995) (quoting *Gates* ).

In determining whether evidence seized subject to a warrant must be suppressed because of lack of probable cause, and therefore because it violates the Fourth Amendment, the court considering suppression must decide whether the issuing judge or magistrate "had a 'substantial basis' for his [or her] probable cause determination." *Tagbering*, 985 F.2d at 949 (citing *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Courts should not invalidate a warrant "by interpreting the affidavit [of probable cause] in a hypertechnical, rather than commonsense, manner." *Id.* at 950 (quoting *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965)).

#### a. "Probable cause" and the First Amendment

▇▇▇▇ DePugh asserts that the warrant in question here authorized seizure of materials presumptively protected by the First Amendment. Penning apparently sought them because he believed them to be sexually explicit or obscene, and therefore evidence of sexual exploitation of minors. However, there is no heightened probable cause standard for the seizure of sexually explicit or obscene materials:

> The standard for probable cause for the issuance of a search warrant for obscene material has been authoritatively established in *New York v. P.J. Video, Inc.*, 475 U.S. [868,] 875, 106 S.Ct. [1610,] 1615 [89 L.Ed.2d 871] [ (1986) ], in which the Court rejected the contention that a higher standard of probable cause should be used than in other areas of Fourth Amendment law and concluded, "Any application for a warrant authorizing the seizure of materials presumptively protected by the First Amendment should be evaluated under the same standard of probable cause used to review warrant applications generally." *Id.* That standard had been determined in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

*United States v. Levinson*, 991 F.2d 508, 510 (9th Cir.1993). Thus, there is no heightened "probable cause" requirement where the materials seized were presumptively protected by the First Amendment.[16]

However, the Fifth Circuit Court of Appeals has recently stated that

> [i]t is, of course, well-settled that the government may not seize presumptively protected expressive materials without a prior judicial determination of obscenity. *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 63, 109 S.Ct. 916, 927, 103 L.Ed.2d 34 (1989); *Universal Amusement Co. v. Vance*, 587 F.2d 159, 169 (5th Cir.1978) (en banc), *aff'd*, 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980).

*United States v. Jenkins*, 974 F.2d 32, 35 (5th Cir.1992). Notwithstanding the broad sweep of the statement in *Jenkins, Fort Wayne Books, Inc.*, does provide a very narrow exception to the pre-seizure judicial determination requirement: "a police officer may seize single copies of [materials presumptively protected by the First Amendment] ... for the purpose of preserving them as evidence in a criminal proceeding so long as the seizure is based on probable cause" without a prior judicial determination that the materials are obscene. *Supreme Video, Inc. v. Schauz*, 15 F.3d 1435, 1442 (7th Cir.1994) (citing *Fort Wayne Books, Inc.*, 489 U.S. at 63, 109 S.Ct. at 927). In *United States v. DePugh*, 993 F.2d 1362 (8th Cir. 1993), the Eighth Circuit Court of Appeals held that an actual review of materials to be seized by the issuing court before a warrant was issued was part of the "totality of the circumstances" weighing in favor of upholding a warrant where the materials to be seized were presumptively protected by the First Amendment. *DePugh*, 993 F.2d at 1363 (no error in determination of probable cause to search for evidence of child pornography where magistrate considered the totality of the circumstances and district court affirmed magistrate's recommendation and also based decision to issue warrant on an actual review of the photographs sought). However, whether or not a pre-seizure judicial determination has been made, if police properly seize material alleged to be obscene, upon the request of the owner there must be a prompt adversarial hearing on the issue of whether the items seized are in fact obscene. *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 63, 109 S.Ct. 916, 927, 103 L.Ed.2d 34 (1989); *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 327–28, 99 S.Ct. 2319, 2324–25, 60 L.Ed.2d 920 (1979); *Supreme Video, Inc. v. Schauz*, 15 F.3d 1435, 1442 (7th Cir.1994). It is undisputed that no such pre-seizure or post-seizure judicial review of the actual photographs seized took place in this case.

#### b. Confidential informants and corroboration

▇▇▇▇ The warrant in this case issued largely on the basis of information supplied

---

**16.** As we shall see below, however, the nature of the materials seized here does require heightened standards in other respects.

by a confidential informant. One area of scrutiny under the "totality of the circumstances" test of probable cause enunciated in *Illinois v. Gates* is "the 'veracity' and 'basis of knowledge' of persons supplying hearsay information." *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332; *see also United States v. Robertson,* 39 F.3d 891, 893 (8th Cir.1994) (Under the "totality-of-the-circumstances" test of *Gates,* " 'the informant's reliability, veracity, and basis of knowledge are relevant considerations—but not independent, essential elements—in finding probable cause,' " quoting *Reivich,* 793 F.2d at 959); *United States v. Hyten,* 5 F.3d 1154, 1156 (8th Cir.1993) (basis of information and credibility are "highly relevant" to a probable cause determination based on information supplied by a confidential informant). The Eighth Circuit Court of Appeals has said that the "core question" in assessing probable cause based upon information from a confidential informant is whether the information is reliable. *United States v. Williams,* 10 F.3d 590, 593 (8th Cir.1993). Reliability of information is established either by the track record of reliability of the informant or by corroboration by independent evidence. *Id.* Reliability also involves whether the information is obtained from first-hand observation or second-hand from reliable sources, rather than from unreliable means such as rumor or innuendo. *United States v. Wagner,* 989 F.2d 69, 73 (2d Cir.1993). DePugh contends that Penning insufficiently corroborated the information provided by the confidential informant and that the information is simply insufficient to establish probable cause that any evidence of criminal conduct was to be found in the premises searched.

Although "there [are] inherent ... indicia of reliability in 'the richness and detail of a first hand observation,' " *Robertson,* 39 F.3d at 893 (quoting *United States v. Jackson,* 898 F.2d 79, 81 (8th Cir.1990)), and an " 'explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles [an informant's] tip to greater weight than might otherwise be the case,' " *id.* (quoting *Gates,* 462 U.S. at 234, 103 S.Ct. at 2330), the Eighth Circuit Court of Appeals held in *Robertson* that where the informant and alleged criminal activity were previously unknown to the investigating officer, some independent corroboration or verification of the tip is needed to establish probable cause for a search warrant to issue. *Id.*

In *United States v. Olson,* 21 F.3d 847 (8th Cir.1994), the criminal defendant challenged a warrant on the basis that an informant had inadequate "basis of knowledge" and that law enforcement officials had conducted an inadequate investigation to corroborate informants' tips to test the informants' veracity and reliability. *Olson,* 21 F.3d at 849. The district court had found that "there was in fact no basis of knowledge for the informants' information, but nonetheless held that the agents' corroboration of the information supported a finding of probable cause." *Id.* at 849–50. The court found that there had been an adequate investigation to corroborate the confidential informants' tips, because the investigating officers had at least verified a number of facts, although individually these facts were consistent with innocence. *Id.* at 850. Furthermore, some of the informants had a "proven track record" of reliability. *Id.*

The court in *Olson* explained the relationship between the two requirements of confidential information, basis of knowledge and reliability, as follows:

> We hold ... that notwithstanding the lack of a basis of knowledge for the informants' information, the search warrant was not fatally defective, because there was sufficient, other evidence from which a finding of probable cause could be made. Our holding is supported by the teachings of both the Supreme Court and this court. In *Gates,* the Supreme Court explained that an informant's reliability and basis of knowledge "are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." 462 U.S. at 233, 103 S.Ct. at 2329. Similarly, in *United States v. Anderson,* relying on *Gates,* we noted that "an informant's

basis of knowledge [is] an important consideration, but not a rigid requirement, in the probable cause determination." 933 F.2d 612, 615 (8th Cir.1991); *see also United States v. Broussard,* 987 F.2d 215, 222 (5th Cir.1993) (probable cause for issuance of warrant to search defendant's mobile home was provided even though affidavit did not contain basis of informant's knowledge, where there were corroborating facts in form of increased electrical usage, blackened windows, and purchase of hydroponic gardening equipment, consistent with marijuana cultivation).

*Olson,* 21 F.3d at 850; *see also United States v. Hohn,* 8 F.3d 1301, 1306 (8th Cir.1993) (affidavit supporting search warrant set forth probable cause, because the police officers sufficiently corroborated the information given by the informant). Similarly, in *Gladney,* the Eighth Circuit Court of Appeals held that when an informant's information is at least partly corroborated, " 'attacks upon credibility and reliability are not crucial to the finding of probable cause.' " *Gladney,* 48 F.3d at 313 (quoting *United States v. Humphreys,* 982 F.2d 254, 259 (8th Cir.1992) (however, affidavit also set forth informant's proven reliability)).

In *United States v. Edmiston,* 46 F.3d 786 (8th Cir.1995), the court reiterated its earlier holding "that if some 'information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, *though uncorroborated,* is also reliable.' " *Edmiston,* 46 F.3d at 789 (quoting *United States v. Williams,* 10 F.3d 590, 593 (8th Cir.1993), with emphasis added by the *Edmiston* court). The *Edmiston* court then held that "[b]ecause the affidavit showed that many of the informants' statements had been corroborated, it was permissible for the magistrate judge to infer that the informants' uncorroborated statements also were reliable." *Id.* The court then rejected the argument that corroboration of only circumstantial matters was insufficient and that, instead, the law enforcement officers "must independently corroborate" the central facts asserted by the informant. *Id.* The court found that corrob-

oration of circumstantial evidence provided by the informant was sufficient, because "[i]f circumstantial evidence can be sufficient to prove the elements of a crime beyond a reasonable doubt, ... then *a fortiori* such evidence can be sufficient to establish probable cause for the issuance of a search warrant." *Id.* (internal citation omitted); *see also Robertson,* 39 F.3d at 894 (corroboration of minor, innocent details can suffice to establish probable cause).

In the present case, DePugh argues that there is nothing in the affidavit to indicate that the confidential informant's information was reliable and that Penning made no effort to corroborate it. Penning counters that his prior investigation of DePugh, in 1988, and DePugh's arrest for alleged sexual exploitation of minors about a month before he sought the search warrant suffice to corroborate the confidential information in this case. DePugh contends that this proffered "corroboration" is too remote to establish probable cause.

### c. Staleness

 Information must be timely for probable cause to exist, because probable cause must exist at the time the judge issues the search warrant. *United States v. Green,* 40 F.3d 1167, 1172 (11th Cir.1994); *United States v. Harris,* 20 F.3d 445, 450 (11th Cir.1994). There is, however, no bright-line test for determining when information is too stale to support probable cause for a warrant. *Koelling,* 992 F.2d at 822. The Eleventh Circuit Court of Appeals has held that "[s]tale information is not fatal where the government's affidavit 'updates, substantiates, or corroborates the stale material.' " *Green,* 40 F.3d at 1172 (quoting *Harris,* 20 F.3d at 450). On this issue, the Eighth Circuit Court of Appeals has observed that

[w]hether the averments in an affidavit are sufficiently timely to establish probable cause depends on the particular circumstances of the case and the vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit. *United*

States v. McCall, 740 F.2d 1331, 1336 (4th Cir.1984). Time factors must be examined in the context of a specific case and the nature of the crime under investigation. *Koelling,* 992 F.2d at 822; *see also United States v. Sturmoski,* 971 F.2d 452, 457 (10th Cir.1992) (where "offense is ongoing and continuing ... the passage of time is not of critical importance"); *United States v. Bucuvalas,* 970 F.2d 937, 940 (1st Cir.1992) ("Staleness does not undermine the probable cause determination if the affidavit contains information that updates, substantiates, or corroborates the stale material."), *cert. denied,* —— U.S. ——, 113 S.Ct. 1382, 122 L.Ed.2d 758 (1993); *United States v. Scalia,* 993 F.2d 984, 986 n. 1 (1st Cir.1993) (appellate court did not reach "staleness" issue, because it found that recent information provided by the informant was sufficient to establish probable cause); *United States v. $149,442.43 in U.S. Currency,* 965 F.2d 868, 873 (10th Cir.1992) (information is not stale if, when combined with other, more recent information, it demonstrates a "strong probability of continuous ongoing criminal involvement covering a broad span of time"). If the information concerning past investigations of DePugh was stale, it cannot supply probable cause, and, this court concludes, cannot corroborate more recent information unless the totality of the information establishes ongoing criminal activity at the place in question.

### d. *Probable cause in this case*

■ In this case, even though there is no heightened standard for probable cause to seize material presumptively protected by the First Amendment, *Levinson,* 991 F.2d at 510, the court concludes that probable cause to seize the items was wholly lacking. Although the application for the warrant indicates, on the basis of confidential information, that "the items sought will be found in the place to be searched," *Edmiston,* 46 F.3d at 789, it fails utterly to establish that "the items sought are connected to criminal activity." *Id.*

The application for the warrant indicates that a box of "Minutemen" literature was present on the premises to be searched, but nowhere does the warrant indicate in what way "Minutemen" literature is supposedly connected to criminal activity of any kind. There is no indication of the contents of this literature, such that the issuing magistrate, or anyone else, could suppose it to contain pornography, obscenity, subversive material, or anything else that might make "Minutemen" literature contraband. There is also no showing in the warrant application that the mere possession of such literature is either criminal or in some way evidence of criminal activity.

Furthermore, "a photo of a young female in a bathing suit and other items such as film, cassettes, and address book" are not items that appear to be anything but innocuous on their face. These are simply personal belongings of a type any person might have boxed for storage. There is nothing in the description of these items by the confidential informant, according to the application, that suggests that they are or contain pornography, obscenity, or evidence of crime. It would take a tremendous leap of faith to turn a photograph of a young female in a bathing suit into evidence of child pornography. The suggestion of the application appears to be that any photograph of a young female, however clothed, was, in the property of Robert DePugh, evidence of sexual exploitation of a minor. Such a suggestion is simply not supported by this application for a warrant. Thus, there is no "substantial basis" for the issuing magistrate's probable cause determination based solely on description of the items sought. *Tagbering,* 985 F.2d at 949.

■ Even if the items identified by the confidential informant as being present in the premises searched could reasonably have been believed to be contraband or evidence of crime, "the 'veracity' and 'basis of knowledge' of persons supplying hearsay information" in this case were inadequately corroborated to establish probable cause. *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332; *Robertson,* 39 F.3d at 893; *Hyten,* 5 F.3d at 1156. Penning made no effort to corroborate even circumstantial information provided by the confidential informant. *Gladney,* 48 F.3d at 313; *Edmiston,* 46 F.3d at 789; *Olson,* 21 F.3d at 849. Penning did not corroborate that De-

Pugh might have left any personal property at the premises after he turned the premises over in his bankruptcy proceedings. The information available to Penning, according to the affidavit, was that Powell, not DePugh, was the current occupant of the building. Thus, any implications that might arise from supposed past misconduct on DePugh's part could only be distantly related to items sought from premises now occupied by someone else without significant corroboration that DePugh was still associated with the premises.

Nor can Penning rely on "indicia of reliability in 'the richness and detail of a first hand observation,'" *Robertson*, 39 F.3d at 893, because Gerald Monk had no first-hand observation upon which to base his information. It is true that the chain through which information was relayed from the person who actually saw the materials in the premises to Penning was probably reliable, originating as the observations did with one bank official of apparent honesty and probity, and passing through another bank official on its way to Penning's ears. However, a tale may always grow in the telling, and it is certain that Monk had no first-hand knowledge, and doubtful at best, based on Penning's own evidence, that he ever went directly to Stull for a first-hand account. Thus, Monk had no "basis of knowledge," and Penning made no effort to corroborate his information by contacting someone who did. *Olson*, 21 F.3d at 849.

■ Penning relies for corroboration on his own investigation of DePugh some two years previously for alleged sexual exploitation of minors, which failed to result in prosecution owing to a lack of evidence. Penning also relies on DePugh's more recent arrest in Polk county for alleged sexual exploitation of minors involving photographs as establishing both corroboration and probable cause that the photographs here were contraband or evidence of criminal activity. The court finds the first episode both too stale and too tenuous and the second too tenuous to establish probable cause for the warrant issued here.

Time factors must be examined in the context of a specific case and the nature of the crime under investigation. *Koelling*, 992

F.2d at 822. Here, the confidential informant's information does not " 'update[ ], substantiate[ ], or corroborate[ ] the stale material' " garnered from an investigation concluded some two years before, *Green*, 40 F.3d at 1172, because there was nothing to indicate that the supposed criminal activity was "on-going" at that location. The record shows instead that DePugh had not conducted any business or resided in the premises for some time; therefore, DePugh could not have been conducting on-going crime from that location. *Cf. Sturmoski*, 971 F.2d at 457 (old and new information indicated on-going drug manufacturing and sales at same location over two-year period). Furthermore, DePugh's arrest elsewhere for alleged sexual exploitation of minors fails to tie that allegedly on-going activity to a former residence without some strong probability that DePugh was still associated with the premises. Penning failed to obtain any such corroboration of DePugh's continued association with the premises.

Furthermore, the court finds that the current information was not sufficient to establish probable cause without corroboration. Therefore, the staleness of the proffered corroboration by Penning is insufficient to support probable cause in this case. *Cf. Scalia*, 993 F.2d at 986 n. 1 (appellate court did not reach "staleness" issue, because it found that recent information provided by the informant was sufficient to establish probable cause). Once again, the suggestion of the application appears to be that any photograph of a young female, however clothed, was, in the property of Robert DePugh, evidence of sexual exploitation of a minor, because at some time two years previously, and then a month previously at some other, distant location, DePugh had been involved in possible sexual exploitation of minors in the form of improper photographs. Without more corroboration, such a suggestion does not establish a probability that contraband or evidence of crime would be found on the premises searched. The court concludes that upon the undisputed record, the warrant in question lacked probable cause and was therefore invalid.

As a final flaw in the probable cause determination here, in issuing the warrant, the magistrate did not review any of the material which the warrant authorized be seized. *DePugh,* 993 F.2d at 1363. Thus, no part of the probable cause determination in this case protected DePugh's First Amendment rights, and the seizure without prior review violated both DePugh's First Amendment and Fourth Amendment rights. *Fort Wayne Books, Inc.,* 489 U.S. at 63, 109 S.Ct. at 927–28; *United States v. Jenkins,* 974 F.2d 32, 35 (5th Cir.1992); *Universal Amusement Co.,* 587 F.2d at 169.

The court turns next to another alleged deficiency in the warrant, a failure to identify the items to be seized with the particularity required by the Fourth and First Amendments.

### 3. Validity of the warrant and "particularity"

A search warrant must describe with particularity the items to be seized. *Andresen v. Maryland,* 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976); *Bieri,* 21 F.3d at 815; *Rickert v. Sweeney,* 813 F.2d 907, 909 (8th Cir.1987). DePugh again asserts that the items sought by the warrant were presumptively protected by the First Amendment. Thus, he argues that the warrant violated heightened particularity requirements of the Fourth Amendment.

The particularity of a warrant for Fourth Amendment purposes is of heightened importance when the warrant seeks seizure of materials presumptively protected by the First Amendment. *Marcus v. Search Warrant,* 367 U.S. 717, 732, 81 S.Ct. 1708, 1716, 6 L.Ed.2d 1127 (1961). However, materials presumptively protected by the First Amendment that are not seized for their ideas are indistinguishable from any other goods. *Stanford v. Texas,* 379 U.S. 476, 485 n. 16, 85 S.Ct. 506, 512 n. 16, 13 L.Ed.2d 431 (1965). In the present case, however, the materials were seized precisely because of their content or the ideas they were expected to contain, alleged child pornography; therefore, the First Amendment is strongly implicated.

The Eighth Circuit Court of Appeals recently considered the particularity with which a warrant to seize evidence of sexual exploitation of children must be stated to avoid violations of either the Fourth Amendment or the First Amendment in *United States v. Koelling,* 992 F.2d 817, 821 (8th Cir.1993). In *Koelling,* the court made the following observations:

> The warrant was graphic. It authorized the search for and seizure of depictions of minors engaging in sexually explicit conduct as defined by 18 U.S.C. § 2256 (1988). In general, we agree with both the Fourth Circuit and the Ninth Circuit that "when a warrant describes the sought for material 'in the graphic terms of the statute on the sexual exploitation of children the . . . [material] is described with all the particularity necessary to satisfy the Fourth Amendment.'" *United States v. Dornhofer,* 859 F.2d 1195, 1198 (4th Cir.1988), *cert. denied,* 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989) (quoting *United States v. Wiegand,* 812 F.2d 1239, 1243 (9th Cir.), *cert. denied,* 484 U.S. 856, 108 S.Ct. 164, 98 L.Ed.2d 118 (1987)). See also *United States v. Rabe,* 848 F.2d 994, 997–98 (9th Cir.1988) (warrant issued for search of residence which limited search to materials "depicting minors engaged in sexually explicit conduct as those terms are defined in [the statute]" held sufficiently particular). We believe the warrant at issue in this case satisfied the particularity requirements of the Fourth Amendment and therefore obviated any justifiable concern that First Amendment values might be trampled on.

*Koelling,* 992 F.2d at 821. The court first concluded that the statute, and hence the warrant which quoted the statute, were explicit about what the sexual conduct depicted must involve.[17] *Id.* Next, the court found that the warrant limited the discretion of law enforcement officers by requiring that the

---

17. The court observed that "the listing of sexual intercourse by type, bestiality, masturbation, and sadistic or masochistic abuse could hardly be more explicit in terms of defining sexual conduct." *Koelling,* 992 F.2d at 821. The court admitted that the words "lascivious exhibition of the genitals or pubic area" was "perhaps less explicit than the other definitions," but that it

contraband involve "child pornography" regarding "minors." *Id.* at 822.[18] Third, the court found that there was only a very slight possibility that the warrant might allow seizure of "child pornography," the mere possession of which, as opposed to shipment, transportation, or mailing, was not otherwise criminal, thus reducing any likelihood that First Amendment values would be implicated. *Id.*;[19] *see also United States v. Layne,*

was sufficiently particular in its commonsense meaning to meet constitutional requirements. *Id.*

18. Again, the court's actual discussion of this point is instructive:

The terms "child pornography" and "minors" as used in the affidavit and the warrant are not so uncertain as to make the warrant defective, even though the reference to "minors" or "children" might infrequently permit the mistaken seizure of "adult pornography." The fact that some adults look like minors and some minors look like adults does not mean a warrant is overbroad. Most minors look like minors and most adults look like adults, and most of the time most law enforcement officers can tell the difference. The Constitution requires no greater precision. *Wiegand,* 812 F.2d at 1243; *Dornhofer,* 859 F.2d at 1198 & n. 2.

*Koelling,* 992 F.2d at 822.

19. Some time ago, the Eighth Circuit Court of Appeals held that in order to protect First Amendment rights, in that case, associational rights, when they were impinged upon by a search warrant, the court must require "scrupulous exactitude" in adherence to the requirements of the Fourth Amendment. *United States v. Apker,* 705 F.2d 293, 300–01 (8th Cir.1983) ("The Supreme Court has stated: 'Where the materials sought to be seized may be protected by the First Amendment, the requirements of the Fourth Amendment must be applied with "scrupulous exactitude." ' *Zurcher [v. Stanford Daily],* 436 U.S. [547,] 564, 98 S.Ct. [1970,] 1980 [56 L.Ed.2d 525] [(1978)]; *quoting Stanford v. Texas,* 379 U.S. [476,] 485, 85 S.Ct. [506,] 511 [13 L.Ed.2d 431] [(1965)]."), *cert. denied,* 465 U.S. 1005 [104 S.Ct. 996, 79 L.Ed.2d 229] (1984). The decision in *Koelling,* although not citing *Apker* or the other precedents identified in it, or casting its discussion in terms of "scrupulous exactitude," nonetheless required careful adherence to the particularity requirement of the Fourth Amendment to avoid First Amendment violations.

20. In *Layne,* the Fifth Circuit Court of Appeals wrote of the particularity requirement in these circumstances as follows:

We note that in cases where warrants seek to seize material presumptively protected by the First Amendment, the Supreme Court has re-

43 F.3d 127, 133 (5th Cir.1995) (particularity requirement for search or seizure of materials presumptively protected by the First Amendment);[20] *Supreme Video, Inc. v. Schauz,* 15 F.3d 1435, 1439 (7th Cir.1994);[21] *United States v. Levinson,* 991 F.2d 508, 510 (9th Cir.1993).[22]

 In the present case, the warrant never explicitly states what evidence of sexu-

quired that the warrant particularly describe the material to be seized. *Marcus v. Search Warrant,* 367 U.S. 717, 732, 81 S.Ct. 1708, 1716, 6 L.Ed.2d 1127 (1961). However, this level of particularity is required only in those cases where in the particular setting, First Amendment rights are implicated. *See United States v. Apker,* 705 F.2d 293, 301 (8th Cir. 1983), *cert. denied,* 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984); *United States v. Aquilar,* 883 F.2d 662 (9th Cir.1989), *cert. denied,* 498 U.S. 1046, 111 S.Ct. 751, 112 L.Ed.2d 771 (1991). The Supreme Court has held that First Amendment rights in searches are implicated where there is a danger of prior restraint. *Maryland v. Macon,* 472 U.S. 463, 470, 105 S.Ct. 2778, 2783, 86 L.Ed.2d 370 (1985).

In this case, we find that no First Amendment rights are implicated by this search. The first warrant was issued to seize evidence corroborating a victim's testimony. It was not issued because of the ideas contained in the material. *Stanford v. Texas,* 379 U.S. 476, 485 n. 16, 85 S.Ct. 506, 512 n. 16, 13 L.Ed.2d 431 (1965) (holding that books not seized for their ideas would be indistinguishable from any other goods). Thus, the particularity required by *Marcus* is not warranted in this case.

*Layne,* 43 F.3d at 133.

21. The Seventh Circuit Court of Appeals also requires the "most scrupulous exactitude" in crafting a warrant "when the basis for seizure is the ideas contained" in the items seized, finding that the "requirement that search warrants particularly describe the things to be seized is a bedrock of Fourth Amendment jurisprudence." *Supreme Video, Inc.,* 15 F.3d at 1439 (citing *Stanford v. Texas,* 379 U.S. at 485, 85 S.Ct. at 511–12; *In re Search of Kitty's East v. United States,* 905 F.2d 1367, 1372–73 (10th Cir.1990).

22. The "scrupulous exactitude" standard was also applied by the Ninth Circuit Court of Appeals in *Levinson,* 991 F.2d at 510. In *Levinson,* the court found that

[t]he [purportedly obscene] videos were described with "the most scrupulous exactitude" required by *Stanford v. Texas,* 379 U.S. 476, 485, 85 S.Ct. 506, 511, 13 L.Ed.2d 431 (1965). The focus was "searchingly on the question of obscenity." *Marcus v. Search Warrant,* 367

al exploitation is sought by the warrant, either in terms of the Iowa statute making such sexual exploitation a crime, or in any other commonsense terms. *Koelling*, 992 F.2d at 821. In fact, the warrant application never explicitly states what crime the materials sought are supposed to be evidence of. It is left to the issuing officer's imagination to decide that the materials sought are evidence of sexual exploitation of a minor, because that was the alleged crime for which DePugh had previously been investigated and recently arrested. Nothing about the warrant here limited the discretion of law enforcement officers by requiring that the contraband involve "child pornography" regarding "minors." *Id.* at 822. In fact, the warrant identifies items only in generic terms, and nothing about that description automatically associates the items to be seized with child pornography. Thus, unlike the warrant in *Koelling*, the warrant here does not satisfy the particularity requirements of the Fourth Amendment and made it likely that First Amendment values would be trampled on. *Id.* at 821. Thus, the warrant in question here also violated the DePugh's Fourth Amendment rights owing to the lack of sufficient particularity in the description of the items to be seized.

### 4. Misleading information

DePugh has not expressly raised a *"Franks"* style challenge to the warrant in question here. *See Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978) (if affidavit of probable cause is flawed by intentional or reckless omission of facts making the affidavit misleading, and the warrant lacks probable cause with the misleading information set aside, the warrant must be set aside and fruits of search suppressed); *Moody v. St. Charles County*, 23 F.3d 1410, 1411–12 (8th Cir.1994) (§ 1983 action alleging violation of *Franks* by "lies" in the affidavit of probable cause for a warrant);[23] *United States v. Jacobs*, 986 F.2d 1231, 1233–34 (8th Cir.1993) (discussing and applying *Franks*); *United States v. Reivich*, 793 F.2d 957, 960 (8th Cir.1986) (same). However, the record suggests that the affidavit could be misleading, because the confidential informant who actually contacted Penning, Gerald Monk, was not the person, John Stull, who had been in the premises in question. The affidavit suggests that the confidential informant had first-hand knowledge of the contents of the boxes sought, when at best Monk had such knowledge second-hand from Stull. Penning does not remember whether or not he contacted Stull directly before seeking the warrant. *Cf. Gladney*, 48 F.3d at 313 (*"Franks"* challenge failed when based on merely negligent relation in affidavit of how informant's information was received, where affiant

U.S. 717, 732, 81 S.Ct. 1708, 1717, 6 L.Ed.2d 1127 (1961). The "factual basis" for the affidavit's conclusions was tangibly present to the magistrate in the descriptions of the videos attached to the affidavit. *Cf. Lee Art Theatre, Inc. v. Virginia*, 392 U.S. 636, 637, 88 S.Ct. 2103, 2104, 20 L.Ed.2d 1313 (1968) (affidavit of police officer stated only the titles of the movies and the conclusion that the movies and the billboard advertising them were obscene). The defendants do not argue that the magistrate judge did not have probable cause to believe that the evidence lacked serious literary, artistic, political, or scientific value. *See Miller v. California*, 413 U.S. [15,] 24, 93 S.Ct. [2607,] 2615 [37 L.Ed.2d 419] [(1973)]. *Levinson*, 991 F.2d at 510. The court went on to hold that neither the magistrate nor the affidavit must cite community standards to show that the material sought is obscene in order to find or establish probable cause. *Id.*

**23.** In *Moody*, the Eighth Circuit Court of Appeals considered a case in which the § 1983 plaintiff alleged that the executing officer "lied in the affidavit that served as the basis for [two] arrest warrants." *Moody*, 23 F.3d at 1411. The court wrote:

> It is clearly established that the Fourth Amendment requires a truthful factual showing sufficient to constitute probable cause before an arrest warrant can issue. *Burk v. Beene*, 948 F.2d 489, 494 (8th Cir.1991). Information in an affidavit to establish probable cause must be truthful in the sense that the information put forth is "believed or appropriately accepted by the affiant as true." *Franks v. Delaware*, 438 U.S. 154, 165, 98 S.Ct. 2674, 2681, 57 L.Ed.2d 667 (1978). No reasonable law enforcement official could think that an arrest under the circumstances alleged by Moody would be permissible under the Fourth Amendment.

*Moody*, 23 F.3d at 1411. However, the defendant in *Moody* was still entitled to summary judgment, because the plaintiff failed to produce a scintilla of evidence that the executing officer "lied" in the affidavit of probable cause. *Id.*

typed affidavit as another officer relayed informant's information to affiant while the other officer was on the telephone with the informant).[24]

Even without a *"Franks"* style claim here, this uncertainty about the actual source of the confidential information relied upon goes into the consideration of the "totality of the circumstances" applicable to whether the search and seizure were unreasonable and whether the officer seeking the warrant and executing it can claim the warrant as a shield to liability. *See Moody,* 23 F.3d at 1412 (no reasonable officer could think his or her actions were permissible under the Fourth Amendment where the officer knew information in the affidavit of probable cause was untruthful).

Because the court finds that the warrant in this case was constitutionally flawed in its lack of probable cause and insufficient particularity, resulting in violations of both the Fourth and First Amendments, the court finds that Penning's motion for summary judgment on the grounds of the validity of the warrant must fail. Consequently, De-Pugh's motion for summary judgment as to the invalidity of the warrant must be granted. However, that conclusion does not end the matter, because Penning has asserted that the search and seizure in question here still pass constitutional muster, because no warrant was required in the specific circumstances of this case. The court therefore turns to consideration of whether Penning's search and seizure were constitutional under the Fourth Amendment even without a valid warrant.

### 5. Validity of a warrantless search and seizure

Searches conducted outside of the judicial process, without prior approval of a judge or magistrate, are *per se* unreasonable under the Fourth Amendment subject only to a

very few specifically established and well-delineated exceptions. *United States v. Estrada,* 45 F.3d 1215, 1218 (8th Cir.1995) (citing *Katz,* 389 U.S. at 357, 88 S.Ct. at 514). Penning claims, however, that even if his warrant was invalid, his search required no warrant, because it was based on a number of well-defined exceptions under which the Fourth Amendment was not implicated. He asserts that he had the consent of bank officials to enter the premises, the property seized was abandoned, and was in plain view, and his search was merely a duplication of a private search. The court finds the proffered grounds for a warrantless search to be nothing more than "straw men" or groundless attempts to justify unconstitutional conduct.

#### a. Consent

As one ground justifying a warrantless search if the warrant actually provided was invalid, Penning argues that he obtained consent from Lincoln Savings Bank officials to conduct the search. DePugh contends that Lincoln Savings Bank officials had no authority to give such consent, because they had no present possessory interest in the premises searched which were still legitimately occupied and controlled by David Powell. De-Pugh contends further that Penning knew the bank had no sufficient authority to consent to the search, because he knew Powell was still in legitimate possession of the premises.

■ The Fourth Amendment is not violated when either the affected party or someone with common authority over the property has consented to a search of that property. *See United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974); *Capraro v. Bunt,* 44 F.3d 690, 691 (8th Cir. 1995) (recognizing consent exception to unconstitutionality of warrantless search of plaintiff's home in § 1983 litigation); *United*

---

24. In *Gladney,* "[t]he affiant did not claim that he spoke directly to the informant," and the relay of information "differs from cases in which informant information was relayed to the affiant at a later date through an unreliable intermediary," because the relay of information to the affiant was "virtually instantaneous." *Gladney,* 48 F.3d at 313. In DePugh's case, although there is little

ground to attack the reliability of the intermediary, Penning represented that the confidential informant had first hand knowledge of the matters involved because the confidential informant had been in the premises, when in fact Penning knew that the person who contacted him had no first-hand knowledge.

*States v. Wright,* 971 F.2d 176, 180 (8th Cir.1992) (search conducted pursuant to valid consent does not violate the Constitution); *United States v. Ramey,* 711 F.2d 104, 107 (8th Cir.1983) ("A search conducted pursuant to a valid consent does not violate the Constitution."). In *Matlock,* the Supreme Court wrote that

> [c]ommon authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, see *Chapman v. United States,* 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961) (landlord could not validly consent to the search of a house he had rented to another), *Stoner v. California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) (night hotel clerk could not validly consent to search of customer's room), but rests rather on *mutual use of the property by persons generally having joint access or control for most purposes,* so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Matlock,* 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7 (emphasis in the original); *Wright,* 971 F.2d at 180 (valid consent may be given by third party who possessed common authority or sufficient relationship to premises); *United States v. Wade,* 740 F.2d 625, 629 (8th Cir.1984) (valid consent may be given by a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected).

Thus, a warrantless search

> may be justified by a preponderant showing of the evidence that voluntary consent to search was given by "a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974); *see also id.* at 177, 94 S.Ct. at 996. This common authority is a function of mutual use, joint access, and control of the property. *See id.* at 171 n. 7, 94 S.Ct. at 993 n. 7.

*United States v. Bradley,* 869 F.2d 417, 419 (8th Cir.1989) (consenting party, although not present at search, rented the house in her name and paid the rent with her public assistance funds, her name was on mailbox and lease, and she had a key, and therefore had authority to consent to search, even though complaining party was occupant of house and was present at time of search; complaining party did not object to search at time it occurred); *see also United States v. Elliott,* 50 F.3d 180, 185 (2d Cir.1995) (citing identical standards).

■ Even if the third party did not have the requisite relationship to the premises, and therefore lacked authority to give valid consent to a search, official reliance on the consent may validate the search if it was reasonable for the officers to believe that the third party had the requisite relationship. *Illinois v. Rodriguez,* 497 U.S. 177, 179, 110 S.Ct. 2793, 2796–97, 111 L.Ed.2d 148 (1990); *Iron Wing v. United States,* 34 F.3d 662, 665 (8th Cir.1994) ("There is no Fourth Amendment violation if 'the facts available to the officer' at the time of the search would warrant a reasonable man in the belief that someone with authority over the premises consented to the search," quoting *Illinois v. Rodriguez,* 497 U.S. 177, 188, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148 (1990)). To put it another way, "[i]t is apparent that in order to satisfy the 'reasonableness' requirement of the Fourth Amendment, what is generally demanded ... [of] the police officer conducting a search or seizure under one of the exceptions of the warrant requirement ... is not that they always be correct, but that they always be reasonable." *Rodriguez,* 497 U.S. at 185, 110 S.Ct. at 2800; *United States v. Sanchez,* 32 F.3d 1330, 1333 (8th Cir.1994) (*Rodriguez* held that "a warrantless entry is valid when based upon the consent of a third party whom the police, at the time of the entry, reasonably believe to possess common authority over the premises, but who in fact does not do so."), *cert. denied,* — U.S. —, 115 S.Ct. 1119, 130 L.Ed.2d 1082 (1995). *Rodriguez* validates only searches that are based on a reasonable mistake as to the

facts, not those based on an erroneous legal conclusion drawn from the known facts. *See Elliott*, 50 F.3d at 186; *United States v. Brown*, 961 F.2d 1039, 1041 (2d Cir.1992) (per curiam); *United States v. Salinas–Cano*, 959 F.2d 861, 865–66 (10th Cir.1992); *United States v. Whitfield*, 939 F.2d 1071, 1073–75 (D.C.Cir.1991).

In *Iron Wing*, the Eighth Circuit Court of Appeals found that police officers reasonably believed that a woman had authority to give consent to a warrantless search where, even though she had no key to the premises, because she told police she was living in the premises, confirmed that statement by her familiarity with the house and the fact that she knew that she had left her bedroom window unlocked. *Iron Wing*, 34 F.3d at 665. Similarly, in *United States v. Brokaw*, 985 F.2d 951 (8th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 300, 126 L.Ed.2d 249 (1993), the court found that there was reasonable basis for assuming valid consent to search a camper when it was obtained from the resident and owner of a nearby cabin, the cabin owner said that he owned the camper, and that the camper was on his land, and the owner further assumed authority to consent to the search. *Id.* at 954.

Courts have held that a landlord does not have common authority over an apartment or other rental unit leased to a tenant so as to be able to give consent to a search. *Chapman v. United States*, 365 U.S. 610, 616–18, 81 S.Ct. 776, 779–80, 5 L.Ed.2d 828 (1961); *Elliott*, 50 F.3d at 186. Nor would an officer's erroneous belief that landlords generally have such authority to consent to a search provide the necessary authorization for a warrantless search. *Elliott*, 50 F.3d at 186.

▆▆▆ In the present case, the undisputed record indicates no basis upon which Penning could have believed bank officials had the authority to consent to search of the premises where DePugh's property was located. Penning argues now, and stated in the warrant application, that the bank was attempting to evict the current tenant of the premises, David Powell, but nothing indicates the bank's "common authority" over the premises or its mutual use of the property, joint access or control for most purposes. *Mat-*

*lock*, 415 U.S. at 171 & n. 7, 94 S.Ct. at 993 & n. 7. The record establishes at most that Penning knew the bank was a disgruntled landlord. Status as a landlord, however disgruntled, does not give the bank the authority to consent to a search of the premises. *Chapman v. United States*, 365 U.S. 610, 616–18, 81 S.Ct. 776, 779–80, 5 L.Ed.2d 828 (1961); *Elliott*, 50 F.3d at 186. Although Penning may have believed that the bank's efforts to recover control of the premises from the current tenant somehow gave the bank greater authority over the premises than it would otherwise have enjoyed, such a belief would be erroneous and therefore cannot provide the necessary authorization for a warrantless search. *Elliott*, 50 F.3d at 186.

Furthermore, Penning has failed to produce any other evidence indicating the bank's common authority over the premises sufficient to establish its power to give consent to a search. Thus, Penning has failed to meet the burdens of demonstrating the bank's authority either to sustain his own motion for summary judgment or to defeat DePugh's. *See Hartnagel*, 953 F.2d at 395 (burden of moving party to establish lack of a genuine issue of fact); *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (nonmovant's burden to designate specific facts showing there is a genuine issue for trial). Nothing Penning has offered attains the "dignity of substantial evidence" that the bank had authority to consent to his search. *Metge*, 762 F.2d at 625. Therefore, there is no evidence "such that a reasonable jury could" find Penning had consent to conduct a warrantless search. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Penning's motion for summary judgment on the ground of consent to a the search must be denied. Penning has also failed to defeat DePugh's motion for summary judgment that the search and seizure violated DePugh's constitutional rights on the ground that Penning had consent for his search.

#### b. Abandonment

The court concluded above, in a discussion beginning at page 34, that Penning has failed to demonstrate that the property seized was abandoned. Thus, just as the argument that the property was abandoned did not defeat DePugh's standing to bring his claims of

violation of his Fourth Amendment rights, abandonment provides no justification for a warrantless search in this case. Penning's motion for summary judgment on the ground that the seizure involved only abandoned property must be denied. Furthermore, Penning has failed to defeat DePugh's motion for summary judgment that the search and seizure violated DePugh's constitutional rights on the ground that Penning seized only abandoned property.

### c. Plain view

■ Penning has suggested that the items seized were in "plain view," and therefore no warrant was required for their seizure.[25] What is in plain view of police officers is not subject to Fourth Amendment protection. *United States v. Lloyd*, 36 F.3d 761, 763 (8th Cir.1994). When evidence seized was in plain view, a warrantless search and seizure of those items is not unlawful and there is no reason to suppress the evidence in a subsequent criminal prosecution. *United States v. Arias–Cardenas*, 36 F.3d 36, 38–39 (8th Cir.1994); *Thomas v. Hungerford*, 23 F.3d 1450, 1453 (8th Cir.1994); *United States v. Hughes*, 940 F.2d 1125, 1126–27 (8th Cir.), *cert. denied*, 502 U.S. 896, 112 S.Ct. 267, 116 L.Ed.2d 220 (1991). The "plain view" doctrine or "plain view" exception to the warrant requirement permits police to seize an item not specified in a search warrant if the police are lawfully in a position to observe the item and its incriminating character is immediately apparent. *Horton v. California*, 496 U.S. 128, 136–38, 110 S.Ct. 2301, 2307–09, 110 L.Ed.2d 112 (1990); *United States v. Evans*, 966 F.2d 398, 400 (8th Cir.1992).[26]

The Supreme Court has said that

[a]n example of the applicability of the "plain view" doctrine is the situation in which the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character.

*Coolidge v. New Hampshire*, 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564 (1971) (plurality opinion). The Eighth Circuit Court of Appeals found circumstances exactly fitting this example in *Evans* in circumstances that led police to seize a number of photographs:

The search warrant for [the criminal defendant's] house authorized the police to seize, among other things, drugs and drug paraphernalia, either of which could have been stored in a box in a closet. The police were, therefore, acting within the scope of the warrant when they opened the box containing the photos. Moreover, the incriminating nature of photos picturing [the defendant] with large quantities of marijuana must have been immediately apparent to the officer who opened the box. The photographs were, therefore, lawfully seized and admissible at trial.

*Evans*, 966 F.2d at 400.

■ However, "plain view" provides grounds for seizure of an item only when an officer's access to the object has some prior justification under the Fourth Amendment, such as execution of a search warrant for other items. *Texas v. Brown*, 460 U.S. 730, 738 & n. 4, 103 S.Ct. 1535, 1541 & n. 4, 75 L.Ed.2d 502 (1983); *United States v. Riedesel*, 987 F.2d 1383, 1392 (8th Cir.1993). Thus, the Supreme Court has said

"What the 'plain-view' cases have in common is that the police officer in each of

---

**25.** Courts have held that leaving property at a place of business is the equivalent of leaving it in plain view in a public place. *See, e.g., Dickens*, 750 F.2d at 1254. However, in the present case, DePugh did not leave his property at the place of business for services of the business as had the civil rights plaintiff in *Dickens*. Rather, he left his personal property in the care of a friend for storage on the business premises, but the storage of the property had nothing whatsoever to do with the business. Thus, this corollary of the "plain view" doctrine is inapplicable in the present case even though DePugh left his property at a business.

**26.** In *Minnesota v. Dickerson*, —— U.S. ——, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the Supreme Court discussed, by analogy, a "plain-feel" exception, which applies "to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search." *Dickerson*, —— at ——, 113 S.Ct. at 2137. Police may seize an object so discovered "if the object's incriminating character is immediately apparent to the officer's touch." *Id.*, —— U.S. at ——, 113 S.Ct. at 2137; *see also United States v. Craft*, 30 F.3d 1044 (8th Cir.1994) (validity of "plain feel" seizure).

them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification—whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused—and permits the warrantless seizure. Of court the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the 'plain-view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges."

*Horton*, 496 U.S. at 135–36, 110 S.Ct. at 2307 (quoting *Coolidge*, 403 U.S. at 465–66, 91 S.Ct. at 2037–38, with footnote omitted). Under *Coolidge*, there were two limitations on the doctrine: "First, that 'plain view *alone* is never enough to justify the warrantless seizure of evidence,' [*Coolidge*, 403 U.S.] at 468, 91 S.Ct. at 2039; and second, that 'the discovery of evidence in plain view must be inadvertent.' *Id.*, at 469 [91 S.Ct. at 2040]." *Horton*, 496 U.S. at 136, 110 S.Ct. at 2307–08. In amplifying the plurality opinion in *Coolidge*, the majority opinion in *Horton* held that

It is, of course, an essential predicate of any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. There are, moreover, two additional conditions that must be satisfied to justify a warrantless seizure. First, not only must the item be in plain view; its incriminating character must also be "immediately apparent." [*Coolidge*, 403 U.S.] at 466, [91 S.Ct. at 2038]; see also *Arizona v. Hicks*, 480 U.S. [321], 326–27 [107 S.Ct. 1149, 1153–54, 94 L.Ed.2d 347] [ (1987) ].

*Horton*, 496 U.S. at 136–37, 110 S.Ct. at 2308; *see also United States v. Hughes*, 940 F.2d 1125, 1126–27 (8th Cir.1991) (summarizing *Horton* ).

In *Hughes*, the Eighth Circuit Court of Appeals summarized the holding of *Horton* as follows:

[The plain view] doctrine allows a police officer to seize evidence without a warrant when (1) "the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed," (2) the object's incriminating character is immediately apparent, and (3) the officer has "a lawful right of access to the object itself." *Horton v. California*, [496] U.S. [136–37], 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990); *see also United States v. Wayne*, 903 F.2d 1188, 1195–96 (8th Cir.1990) (pre-*Horton* case). The discovery of evidence in plain view need not be inadvertent. *Horton*, [496 U.S. at 129, 137] 110 S.Ct. at 2304, 2308 (eliminating inadvertence requirement of plurality in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

*Hughes*, 940 F.2d at 1126–27.

The purported "plain view" seizure in this case fails all three of the requirements stated in *Horton* and *Hughes*. Most damning is the lack of any Fourth Amendment justification for Penning arriving at the place from which the evidence could be plainly viewed. *Hughes*, 940 F.2d at 1126–27. The court has concluded that the warrant that purportedly provided such justification for searching the premises was invalid. Although consent to a search of a general area extends to objects in plain view within that area, *United States v. Wright*, 971 F.2d 176, 180 (8th Cir.1992), in this case, there was no valid consent. Thus, the search and seizure in question here fail the first requirement of the "plain view" doctrine, because police were not lawfully in a position to observe the item. *Horton*, 496 U.S. at 136–38, 110 S.Ct. at 2307–09; *Evans*, 966 F.2d at 400; *Hughes*, 940 F.2d at 1126–27.

Even if Penning had had a valid reason to be present searching the premises here, the incriminating character of the items seized was not immediately apparent. *Horton*, 496 U.S. at 136–38, 110 S.Ct. at 2307–09; *Evans*, 966 F.2d at 400; *Hughes*, 940 F.2d at 1126–27. As the court observed above, "a

photo of a young female in a bathing suit and other items such as film, cassettes, and address book" are not items that appear to be anything but innocuous on their face. These are simply personal belongings of a type any person might have boxed for storage. There is nothing about these items that suggests that they are or contain pornography, obscenity, or evidence of crime. Nothing about the one visible photograph, a girl in a swimsuit, bears anything like the obvious connection with criminal activity of the photographs in *Evans*, 966 F.2d at 400, showing the defendant with large quantities of contraband. *See also Hughes*, 940 F.2d at 1127 (obvious incriminating character of gun and cocaine found during search for necklace). Nor can this seemingly innocent item be made into an incriminating one in the circumstances of this case, *Cf. Wright*, 971 F.2d at 180 (airline ticket, otherwise innocent, demonstrated travel and destination of defendant and his connection to cocaine distribution network), because the photograph shows no relationship to any criminal conduct.[27]

Penning has again failed either to demonstrate that there is no genuine issue of material fact that the incriminating character of the items seized was obvious or to generate a genuine issue of material fact in order to forestall summary judgment that the items seized somehow were of an obvious incriminating character. *Hartnagel*, 953 F.2d at 395; *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Metge*, 762 F.2d at 625. Penning is not entitled to summary judgment in his favor on the basis of a "plain view" seizure, nor has he defeated DePugh's motion for summary judgment on this ground.

### d. Duplication of a private search

As a final basis for asserting that no warrant was required for the search and seizure of the items in question here, Penning asserts that his search was merely "duplicitous" of a prior private search, and therefore could not violate the Fourth Amendment.

Penning asserts that he did no more than "follow in the footsteps" of the bank official who had previously entered the building and observed the items seized. Penning argues that the bank official could just as easily have seized the items and turned them over to the police, or could have testified as to his observations of the materials without implicating the Fourth Amendment. Penning bases this argument on the holding of *United States v. Parker*, 32 F.3d 395 (8th Cir.1994), to the effect that a "search by a private party not acting as an agent of the government does not implicate the Fourth Amendment." *Parker*, 32 F.3d at 398 (citing *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984)); *see also United States v. Garlock*, 19 F.3d 441, 442 (8th Cir. 1994) ("The Supreme Court has expressly held that the constraints of the Fourth and Fifth Amendments do not apply to purely private activity.").

Penning has misconstrued the import of *Parker*. *Parker* says nothing about whether an official search following in the footsteps of a private search violates the Fourth Amendment; it says only that the private search does not violate the Fourth Amendment. *See Garlock*, 19 F.3d at 442–43 (considering the question of whether searchers, ostensibly private persons to whom the Fourth Amendment did not apply, were in fact officials or agents of the government such that the Fourth Amendment did apply to their search). The Fourth Amendment's purpose is specifically to protect citizens against the invasive conduct of *government* officials. *See* U.S. CONST.AMEND. IV; *Soldal*, —— U.S. at ——, 113 S.Ct. at 548). Nothing any private citizen does prior to an official search can obviate the need for Fourth Amendment scrutiny of the conduct of government officials.[28] The private search here in no way removed Penning's own conduct from the purview of the Fourth Amendment. As the Supreme Court's decision in *Soldal* recently made clear, "the reason why an officer might

---

27. The court rejects as unreasonable any suggestion that just because the photograph might suggest that DePugh took photographs of juvenile females it also suggests that he took photographs that constituted sexual exploitation of juvenile females.

28. Obviously, some kinds of private conduct, such as consent to a search, can remove official conduct from the *prohibitions* of the Fourth Amendment, but the Fourth Amendment is still relevant to the determination that the consensual search was legitimate.

enter a house or effectuate a seizure is wholly irrelevant to the threshold question of whether the [Fourth] Amendment applies. What matters is the intrusion on the people's security from *governmental* interference." *Soldal,* —— U.S. at ——, 113 S.Ct. at 548 (emphasis added).

The court has found that Penning's search was without justification under the Fourth Amendment, and therefore Penning's conduct violated DePugh's rights under the Fourth Amendment whether or not it was preceded by a private search to which the Fourth Amendment does not apply. The court must therefore consider whether Penning is entitled to qualified immunity from damages for his violation of DePugh's constitutional rights.

### D. Qualified Immunity

The standard for qualified immunity is that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Bills v. Dahm,* 32 F.3d 333, 334 (8th Cir.1994); *Givens v. Jones,* 900 F.2d 1229, 1231–32 (8th Cir.1990) (quoting *Harlow* ); *Gorra v. Hanson,* 880 F.2d 95, 97 (8th Cir.1989) ("A law enforcement officer is shielded by qualified immunity from civil liability if the officer '[did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known,' " quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

"[T]o be clearly established, [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Bills,* 32 F.3d at 335; *Johnson–El v. Schoemehl,* 878 F.2d 1043, 1048 (8th Cir.1989); *See also Anderson v. Creighton,* 483 U.S. 635, 640–41, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987). The shield of qualified immunity is breached if "the unlawfulness of the action

[is] apparent in light of pre-existing law." *Bills,* 32 F.3d at 334–35. However, the Supreme Court has made clear that a plaintiff cannot defeat an official's claim of qualified immunity " 'simply by alleging violation of extremely abstract rights.' " *Bills,* 32 F.3d at 335 (quoting *Anderson,* 483 U.S. at 639, 107 S.Ct. at 3038–39); *Givens,* 900 F.2d at 1232 (quoting *Anderson,* 483 U.S. at 639, 107 S.Ct. at 3038–39).

### a. Analysis of a qualified immunity defense

■ Ordinarily, the court must make a three-part inquiry to determine whether the defendant is entitled to qualified immunity: First, it must determine whether the prisoner has asserted a violation of a constitutional right; second, whether the allegedly violated constitutional right was clearly established; and third, if, given the facts of the case, a reasonable official would have known that the alleged actions violated the right. *Foulks v. Cole County, Mo.,* 991 F.2d 454 (8th Cir. 1993); *Cross v. City of Des Moines,* 965 F.2d 629, 631–32 (8th Cir.1992). *See also Loggins v. Delo,* 999 F.2d 364, 366 (8th Cir.1993) (first step in qualified immunity analysis was determination of whether conduct violated any clearly established right). The conduct of a reasonable official is measured by what " '[a] reasonably competent official should know.' " *Walters v. Grossheim,* 990 F.2d 381, 384 (8th Cir.1993) (quoting *Slone v. Herman,* 983 F.2d 107, 111 (8th Cir.1993), and denying qualified immunity because a reasonably competent official should know that unless a judgment has been stayed it must be obeyed). Good faith is not an element of the defense, nor relevant to the qualified immunity inquiry, because "the standard is one of 'objective reasonableness.' " *Slone,* 983 F.2d at 110 (quoting *Burk v. Beene,* 948 F.2d 489, 494 (8th Cir.1991), in turn quoting *Malley v. Briggs,* 475 U.S. 335, 344, 106 S.Ct. 1092, 1097–98, 89 L.Ed.2d 271 (1986)).

The Seventh Circuit Court of Appeals has held further that the test of qualified immunity

is not whether the conduct is clearly constitutional, but whether it is clearly unconstitutional. [Plaintiff's] proposed test would focus on whether courts have specifically sanctioned particular conduct, where-

as the correct inquiry is whether courts have found the conduct unconstitutional or have defined a constitutional right in such a way that " 'a reasonable official would understand that what he is doing violates that right.' " *McDonald v. Haskins*, 966 F.2d 292, 293 (7th Cir.1992) (quoting *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law, the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039 (citations omitted).... Application of this test "does not require a prior case that is 'precisely on all fours on the facts and law.' " *McDonald*, 966 F.2d at 293.... Rather, we are concerned with whether the law was clear "in relation to the specific facts confronting the public official[s] when [they] acted." *Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir.), *cert. denied*, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988); *see also McDonald*, 966 F.2d at 294.

*Knox v. McGinnis*, 998 F.2d 1405, 1409–10 (7th Cir.1993) (some internal citations omitted). Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Anderson*, 483 U.S. at 638, 107 S.Ct. at 3038. The immunity defense should fail if the official violates a clearly established right, because "a reasonably competent public official should know the law governing his conduct." *Slone*, 983 F.2d at 109 (quoting *Harlow*, 457 U.S. at 819, 102 S.Ct. at 2738–39). Therefore, qualified immunity extends to "a prison official who relies on a facially valid regulation unless he knows or should know that the regulation violates a well established constitutional right consisting of the particular act" he punishes or prohibits. *Wolfel v. Morris*, 972 F.2d 712, 719–20 (6th Cir.1992); *Cf. Cross*, 965 F.2d at 632 (official's conduct is protected if reasonable in light of the law and information official possessed at the time).

#### *b. The test for qualified immunity on summary judgment*

Although the court identified above the usual analysis of a proffered defense of quali-

fied immunity to liability for a constitutional violation, the court must determine the proper test for qualified immunity in the posture of these proceedings, cross-motions for summary judgment on this issue. The test for qualified immunity at the summary judgment stage of a proceeding is an objective one: The plaintiff must demonstrate that the law is clearly established and the defendant then bears the burden of showing that his conduct either does not violate plaintiff's rights or that there were extraordinary circumstances and that the defendant neither knew nor should have known of the relevant legal standard. *Johnson–El*, 878 F.2d at 1048. If the plaintiff can show that the defendant's conduct violated clearly established law, "then the defendant, as the movant for summary judgment, must demonstrate that no material issues of fact remain as to whether the defendant's actions were objectively reasonable in light of the law and the information the defendant possessed at the time of his actions." *Cross*, 965 F.2d at 632 (quoting *Salmon v. Schwarz*, 948 F.2d 1131, 1136 (10th Cir.1991)); *Johnson–El*, 878 F.2d at 1048 ("The defendant bears the burden of proof with respect to all other elements of the defense....").

#### *c. Qualified immunity for an unconstitutional search or seizure*

The present proceedings present the question of qualified immunity in the context of an unconstitutional search and seizure. In *Supreme Video, Inc. v. Schauz*, 15 F.3d 1435 (7th Cir.1994), the Seventh Circuit Court of Appeals determined the standard for qualified immunity under *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738, in the context of an allegedly unconstitutional search and seizure, by applying the standards stated in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). *Leon* holds that where officers reasonably believed and a judge determined that probable cause existed, suppression of evidence seized pursuant to the resulting, invalid warrant is unnecessary. *Leon*, 468 U.S. at 922 n. 23, 104 S.Ct.

at 3420 n. 23. Thus the court asked "'whether a reasonably well-trained officer would have known that the search [or seizure] was illegal despite the magistrate's authorization.'" *Supreme Video, Inc.*, 15 F.3d at 1439 (quoting *Leon*, 468 U.S. at 922 n. 23, 104 S.Ct. at 3420 n. 23 (1984), and *Malley v. Briggs*, 475 U.S. 335, 345, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986), which quotes *Leon*; the court ultimately found that the officers could not reasonably have known that their seizure violated the Fourth Amendment); *and compare Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (qualified immunity for warrantless search depends upon reasonableness of belief that probable cause existed). In making a determination of reasonable reliance on an invalid warrant, courts of the Eighth Circuit must "examine the totality of the circumstances, including information the officers possessed that they did not present to the judge via the affidavit." *United States v. Wellman*, 33 F.3d 944, 946 (8th Cir.1994); *United States v. Frangenberg*, 15 F.3d 100, 103 (8th Cir.1994), *cert. denied*, — U.S. ——, 114 S.Ct. 2686, 129 L.Ed.2d 818 (1994).

*Leon* identified four situations in which the executing officers could not reasonably rely on the warrant: (1) where the issuing judicial officer was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) where the issuing officer "wholly abandoned his judicial role;" (3) where the affidavit supporting the warrant contained so few indicia of probable cause "as to render official belief in its existence entirely unreasonable;" and (4) where the warrant itself is so facially deficient that no executing officer could reasonably presume it to be valid. *Leon*, 468 U.S. at 923, 104 S.Ct. at 3420–21; *see also United States v. Maholy*, 1 F.3d 718, 722–23 (8th Cir.1993) (although warrant might have lacked probable cause under subsequently decided case, at time warrant was issued, officers could have relied on it in good faith); *Tagbering*, 985 F.2d at 950–51 (magistrate did not abandon his role and affiant held back no information, so *Leon* barred suppression of evidence seized pursuant to subsequently invalidated warrant).

In two recent decisions, the Eighth Circuit Court of Appeals has found that officials failed to satisfy the good-faith exceptions created by *Leon* for reliance on an invalid warrant. In *United States v. Hogan*, 25 F.3d 690 (8th Cir.1994), the court found that information supplied by a confidential informant did not establish probable cause for a warrant to seize an Oldsmobile and use a "canine sniff" to search for drugs, because the informant's information did not even mention that vehicle, the criminal defendant's conduct observed was innocuous, and a search of his home and truck did not turn up "distribution amounts" of marijuana or any methamphetamine. *Hogan*, 25 F.3d at 694. The court concluded that

> the facts do not support a conclusion that an objectively reasonable officer could have believed the seizure of the car and subsequent canine sniff was lawfully obtained. These facts are not "close enough to the line of validity" to "push the case into the gray area created by *Leon*." *[United States v.] White*, 890 F.2d [1413,] 1419 [ (8th Cir.1989), *cert. denied*, 498 U.S. 825 [111 S.Ct. 77, 112 L.Ed.2d 50] (1990) ]. Accordingly, the judgment of the district court denying Hogan's motion to suppress must be reversed.

*Hogan*, 25 F.3d at 694. Similarly, in *United States v. Jacobs*, 986 F.2d 1231 (8th Cir. 1993), the court found that *Leon* did not protect officers from the consequences of a *"Franks"* violation, and even if it could, the court would not find that the officers acted reasonably when they relied on a warrant knowing that drug-sniffing dogs had not reacted positively to the items sought to be seized as containing drugs and that information had not been provided to the magistrate. *Jacobs*, 986 F.2d at 1235. The court found that the fact that the dogs had not reacted should have alerted the officers to the lack of probable cause to examine the package in question. *Id.*

#### d. Qualified immunity here

 The court finds that there is no doubt that DePugh has demonstrated that the law is clearly established, because there is no argument among the parties as to the

applicable law on DePugh's substantive claims; the question of qualified immunity here therefore turns on whether Penning can show that no material issues of fact remain as to whether his actions were objectively reasonable in light of the law and the information he possessed at the time of his actions. *Cross*, 965 F.2d at 632; *Johnson–El*, 878 F.2d at 1048.

In the present case, the court finds that each and every one of the grounds identified in *Leon* as making plain that executing officers could not reasonably rely on a warrant is present here. *Leon*, 468 U.S. at 923, 104 S.Ct. at 3420–21. First, the court has identified the misleading aspect of the application for the warrant here as to the confidential informant's supposed first-hand observation of the items seized. *Id.* Even without a *"Franks"* style claim here, this uncertainty about the actual source of the confidential information relied upon goes into the consideration of the "totality of the circumstances" applicable to whether the search and seizure were unreasonable and whether the officer seeking the warrant and executing it can claim the warrant as a shield to liability. *See Moody*, 23 F.3d at 1412 (no reasonable officer could think his or her actions were permissible under the Fourth Amendment where the officer knew information in the affidavit of probable cause was untruthful); *see also Jacobs*, 986 F.2d at 1235 (*Leon* provides no shield for a *Franks* violation). Penning was aware of or should have been aware of the misleading nature of his affidavit concerning the confidential informant's lack of first-hand information, because he knew that Monk did not enter the premises, but was only reporting on what Stull said he had seen. *Wellman*, 33 F.3d at 946; *Frangenberg*, 15 F.3d at 103.

Second, although the court has previously dismissed the magistrate who issued the warrant here on the ground of judicial immunity, the court finds that the issuing officer "wholly abandoned his judicial role." *Leon*, 468 U.S. at 923, 104 S.Ct. at 3421. Because the affidavit of probable cause was so lacking in even the hint of contraband or evidence of criminal activity, the court cannot conceive of the basis for the magistrate's probable cause

determination. The warrant here smacks of taking the sheriff's word for it all. The Fourth Amendment requires more from the issuing officer.

Third, the affidavit supporting the warrant here contained so few indicia of probable cause "as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923, 104 S.Ct. at 3421. Again, there is absolutely nothing in the application for the warrant which establishes even the remote possibility that contraband or evidence of criminal activity would be found in the premises. The facts asserted in the application for a warrant are not "close enough to the line of validity" to "push the case into the gray area created by *Leon*." *Hogan*, 25 F.3d at 694 (quoting *White*, 890 F.2d at 1419). Penning's reliance on the warrant was not reasonable in light of the information provided in the warrant.

Finally, the warrant so badly fails to describe with the requisite particularity what items are to be seized under Fourth and First Amendment standards, in light of the presumptively protected nature of that material, that the warrant itself is so facially deficient that no executing officer could reasonably presume it to be valid. *Leon*, 468 U.S. at 923, 104 S.Ct. at 3420–21. Failing *Leon* on all four of the grounds identified in that decision, this court concludes that Penning could not in good faith have relied on the validity of the warrant to seize DePugh's property.

Nor is Penning entitled to qualified immunity because he reasonably relied on grounds for a warrantless search. *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (qualified immunity for warrantless search depends upon reasonableness of belief that probable cause existed). The court has concluded that Penning could not reasonably have believed that he had consent from a person with sufficient authority to make his search or that the property seized was abandoned. Similarly, because Penning lacked a legitimate reason for his presence within the premises and because he cannot show that the incriminating nature of the items seized was obvious, he cannot reasonably assert that he seized the items pur-

suant to the "plain view" exception. Finally, there is no basis in the law for arguing that a police search that duplicates a prior private search, which does not implicate the Fourth Amendment, is somehow immune from Fourth Amendment strictures. Penning has offered no reasonable basis upon which his search and seizure could be constitutionally valid without a warrant. *Slone,* 983 F.2d at 109 ("a reasonably competent public official should know the law governing his conduct."). Given the facts of this case, a reasonable official would have known that the alleged actions violated DePugh's rights. *Foulks,* 991 F.2d 454; *Cross,* 965 F.2d at 631–32. Penning is not entitled to summary judgment on the grounds of qualified immunity.

Although the court has concluded that DePugh's rights have been violated and that Penning has no valid defenses, and therefore DePugh is entitled to summary judgment in large part on his claims, there is still an issue to be decided upon further hearing. That issue is the extent of DePugh's damages, whether compensatory, merely nominal, or punitive.

## V. CONCLUSION

The court concludes that Penning's motion for summary judgment must be denied as to all but DePugh's "fifth cause of action," which alleged violation of DePugh's First Amendment right of access to the courts. That cause of action fails for lack of evidence. Although Penning is not entitled to summary judgment, the court concludes that DePugh is entitled to summary judgment as to liability for violation of his Fourth Amendment rights to be free of unreasonable searches and seizures and related First and Fourteenth Amendment rights arising from the seizure of presumptively protected materials. DePugh has standing to pursue his claims, because he had both a privacy interest and a property interest in the items seized. DePugh had not abandoned this property, but left it in the safe-keeping of a friend with a reasonable expectation that it would remain private. Furthermore, contrary to Penning's assertions, DePugh's claims do not fail for lack of showing of harm. Although De-Pugh's claim of actual harm may not be sufficient to sustain an award of compensatory damages, a finding of violation of his rights under the Fourth Amendment alone would entitle him to nominal damages and possibly punitive damages. Certainly, De-Pugh's "cause of action" does not fail even if he does not show actual harm; only his right to compensatory damages fails if he nonetheless shows a violation of his constitutional rights.

As to DePugh's substantive claims, the warrant in question here was devoid of probable cause for seizure of the items identified. There is no indication in the application for the warrant that the contents of the "Minutemen" literature or any of the other items sought were contraband or evidence of criminal activity. Additionally, the information of the confidential informant, upon which the warrant was largely based, was not properly corroborated. The purported corroboration offered here was either too stale, too tenuous, or both to provide probable cause. The warrant also violated DePugh's First and Fourteenth Amendment rights, because there was no probable cause determination prior to seizure of presumptively protected materials. Furthermore, the warrant was deficient under the First and Fourth Amendments, because it failed to state with sufficient particularity what evidence of sexual exploitation of minors was sought.

As to claims that no warrant was required to authorize the seizures here, the court finds the arguments offered to be "straw men." On the record it is plain that Penning did not have consent for the search from a person with sufficient authority to offer such consent and that he could not reasonable have believed otherwise. The bank, from whom Penning claims that he obtained consent, did not have authority over the premises, but was only attempting to recover them from the current tenant and this situation was known to Penning. Nor was the property abandoned, but rather left for safe-keeping with a friend in a private place. As to the purported applicability of the "plain view" exception, a legitimate reason for Penning's presence in a place where he might discover the items seized in plain view was wholly

lacking. He had neither a valid warrant nor valid consent to be in the premises. At least as fatal is the obvious lack of the immediately apparent criminal character of any of the items seized. Finally, the fact that the search and seizure were preceded by a private search in no way insulates Penning's conduct from Fourth Amendment requirements. The Fourth Amendment is directed at official conduct, and that official conduct here was violative of DePugh's rights.

Nor can Penning raise a valid defense of qualified immunity. In this case, Penning's reliance on the invalid warrant involved each and every one of the grounds identified in *Leon* as making reliance on a warrant unreasonable. This court joins with others in finding the *Leon* standard to be applicable to the question of qualified immunity for a Fourth Amendment violation. The warrant application was misleading to the extent that there is uncertainty about the confidential informant's identity and first-hand knowledge. Penning knew or should have known that the warrant application was misleading on these points. However, perhaps more telling, is the issuing officer's total abandonment of his judicial role. Because there is not a hint of probable cause in the warrant application, the court cannot conceive of the basis for the magistrate's probable cause determination. The magistrate appears simply to have taken the sheriff's word for it all. Nor are there sufficient indicia of probable cause to place the case in the "gray area" in which official belief in the existence of probable cause could be reasonable. Finally, the warrant so badly fails to describe with the requisite particularity what items are to be seized in light of the presumptive protection the materials sought should have enjoyed under the First Amendment, that it was deficient on its face, and Penning could not in good faith have relied upon its validity.

Penning's reliance on grounds for a warrantless search is equally unreasonable. Penning could not reasonably have believed either that the property in question was abandoned or that he had consent from someone with proper authority to conduct a search. He lacked a valid reason to be present in the premises and cannot reasonably claim that the incriminating character of any item in plain view was immediately apparent. Nor can a prior private search provide Penning with a reasonable basis for believing he could make a valid warrantless search.

DePugh's rights under the First, Fourth, and Fourteenth Amendments were therefore violated in the manner described herein and Penning has no valid defenses to DePugh's claims. DePugh is entitled to summary judgment as to liability, and this matter will proceed to a hearing solely on the issue of the extent of DePugh's damages.

**IT IS SO ORDERED.**